495 So.2d 475 (1986)
Billy Gene SEALES & Ricky Brown
v.
STATE of Mississippi.
No. 56421.
Supreme Court of Mississippi.
September 24, 1986.
Mark S. Duncan, James M. Mars, II, Mars, Mars & Mars, Philadelphia, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and GRIFFIN, JJ.
PRATHER, Justice, for the Court:
This case is an appeal from the Circuit Court of Neshoba County, Mississippi, wherein Billy Gene Seales and Ricky Brown were convicted of armed robbery in a joint trial. They received sentences of *476 fifteen (15) and twenty-five (25) years, respectively.
Appellants Brown and Seales appeal their conviction assigning error in the admission of confessions made by each defendant, claimed to be a product of unlawful arrest.
Appellants further contend that the trial court erred in admitting into evidence the confessions of each defendant in the State's case in chief, as a violation of their constitutional right to confront witnesses.

I.
On Friday, December 7, 1984, at approximately 12:30 p.m., a black male entered Seemore T.V., Inc., in Philadelphia, MS. The identity of the male was concealed by a white toboggan head cover which had holes cut out for the eyes. The male shoved one customer, then pointed a pistol at a customer and an employee engaged in conversation on the phone. The subject removed $702.00 in cash and 42 checks and left the building in a fast "trot". James Louis Crowe, an employee of the nearby business, followed the subject and saw him get into the passenger side of a green Coupe driven by another. Crowe observed the car had no license plate.
Several days later Officer Bobby Anderson contacted Crowe and asked him to identify a car located by the police that fit the description of the vehicle used in the robbery. After riding by the car twice, Crowe stated he was "very confident" that the car was the same. The car belonged to Billy Gene Seales. Based on this information, Anderson obtained an arrest warrant for Seales' arrest. The State alleges that, after being advised of his constitutional rights and conferring with his father, Seales made a statement confessing to his own involvement and implicating Ricky Brown.
Another witness, a pedestrian, Sandra Stribling, admitted she could not see Brown's face, but identified him as the robber. In addition, the police received an anonymous call reporting that Brown had been bragging at work about having "pulled off" a robbery. On this information, Ricky Brown was arrested. He refused to make a statement, and although advised of his rights, did not request a lawyer. He remained incarcerated until the next day. Sometime while in jail, Brown learned that Seales had signed a confession, and Brown asked to see Officer Anderson. The State again informed Brown of his constitutional rights, after which he signed a written waiver and statement concerning his involvement in the robbery which further implicated Billy Gene Seales.
At trial the judge dismissed the jury during examination of the defendants about the arrests and the voluntariness of the confessions. The trial judge admitted the statements of each with instructions to the jury that each confession should only be considered as to each defendant and not to any other person incriminated by the confessions.
Upon conviction, the appellants now contend that the statements were the product of illegal arrests and the admission of the statements denied them their constitutional right to confrontation of witnesses guaranteed in Article 3, Section 26 of the Mississippi Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.

II.

As to the Appellant Seales

Was the appellant Seales' statement the fruit of an illegal arrest and should it have been excluded from the evidence?
Appellant Seales submits that his arrest was in violation of Article 3, Section 23 of the Mississippi Constitution and the Fourth and Fourteenth Amendments to the United States Constitution in that the arrest was made without probable cause, and that his statement, the fruit of an illegal arrest, should have been excluded from evidence.
Facts available to the officer seeking the arrest warrant were as follows:
(1) Witness for the State, Louis Crowe, saw the robber leave the store "in a trot" *477 and get into the passenger side of a dark green vehicle identified as a Ford LTD or "or something similar to that."
(2) Crowe noticed the car had no license plate and observed bright chrome in the area of the license plate.
(3) Days later Officer Anderson located the car and twice drove with Crowe to view the car.
(4) Crowe stated he was "very confident" that the car was the same that had been used in the robbery.
(5) Billy Gene Seales owned the car.
Based on these facts, Anderson obtained a warrant for Seales' arrest.
In Hester v. State, 463 So.2d 1087 (Miss. 1985), this Court stated:
In Powe v. State, 235 So.2d 920 (Miss. 1970), we said that probable cause exists where the ... available evidence makes it reasonable to infer that the particular person not necessarily was, but may have been, one of the offenders ...
It is clear therefore that "probable cause" means less than the evidence which would justify condemnation [citations omitted] but more than bear suspicion.
463 So.2d at 1090.
It appears that the information available made it reasonable to infer that Seales may have been one of the offenders, and that the arrest was lawful. The State further submits that even if the arrest was illegal, Seales' confession was properly admitted under standards set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In Lockett v. State, 459 So.2d 246 (Miss. 1984), this Court recognized:
The Court in Brown then set forth several factors which it regarded as critical to determining whether a confession obtained by an illegal arrest was the product of free will. Those factors are: (1) The giving of Miranda warnings. (2) The temporal proximity of the arrest and the confession. (3) The presence of intervening circumstances. (4) The purpose and flagrancy of the official misconduct. (5) Any other circumstances that seem relevant. The United States Supreme Court repeated these factors in Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). In Hall v. State, 427 So.2d 957 (Miss. 1983), this Court has had occasion to recognize and apply the holding in Brown.

459 So.2d at 250.
The record of the present case evidences the following facts:
(1) Before Seales gave his confession, Officer Anderson read him the Miranda warnings.
(2) Seales stated that he understood those rights, and signed a written waiver thereof.
(3) No threats or promises were made, no violence was committed and no hopes of leniency or reward were offered.
After being advised of his rights, Seales declined to make a statement before his father arrived. Seales' father and Seales were allowed to talk privately. Shortly thereafter Seales' father told Officer Anderson, "Come back in. Billy Gene wants to tell you what happened." At that point Seales gave his statement.
The arrest warrant was issued with probable cause and the waiver and confession given by Seales were knowingly and willingly given. The assignment of error is without merit.

As to the Appellant Brown

Was the statement of the appellant Brown the fruit of an illegal arrest, requiring exclusion as evidence?
Probable cause exists where the arresting officer has facts and circumstances within his knowledge which are sufficient within themselves to warrant a man of reasonable caution to believe that a person has committed an offense. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Probable cause for arrest is something stronger than bare suspicion *478 or belief of the officer. Rome v. State, 348 So.2d 1026, 1028 (Miss. 1977). See also, Hester v. State, 463 So.2d 1087 (Miss. 1985).
The evidence at trial revealed that a black male with a mask robbed Seemore T.V., Inc. at gunpoint. Sandra Stribling, a pedestrian, saw the man run out of the store. Ms. Stribling later saw Brown and identified him as the man who committed the robbery. Additionally, the police received an anonymous phone call reporting that Brown had been bragging at work about "pulling a robbery off" in town and "the police weren't smart enough to catch him." Based on this information, Officer Anderson obtained a warrant for Brown's arrest. The State asserts that the identification of Brown by Ms. Stribling, although challenged at trial, was by itself sufficient to obtain the arrest warrant and that the reliability of the anonymous caller or the information obtained should not be considered on probable cause testing. Cf. Walker v. State, 473 So.2d 435, 439 (Miss. 1985) [if reliability of statement by confidential source in affidavit is lacking, remainder of affidavit may be considered to determine if probable cause existed for issuance of a search warrant].
The appellant submits that given the totality of the circumstances under Gates v. Illinois, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause did not exist to arrest him.
In Lee v. State, 435 So.2d 674 (Miss. 1983), this Court accepted the new "totality of the circumstances" analysis in Gates for determining whether probable cause exists. Looking to the facts and circumstances known to Officer Anderson, which he in turn relayed to the justice court judge, it appears that the information supporting Brown's involvement was more than mere suspicion and sufficient to procure a warrant for Brown's arrest.
According to the testimony of three witnesses for the State, at the time of Brown's arrest, he was advised of his Miranda rights but he refused to make a statement. When asked if he wanted to make a phone call, he declined. Brown was held in the Neshoba County Detention Center overnight. At some point after he went to jail, Brown found out that Seales had confessed. Brown sent word the next morning that he wanted to see Officer Anderson. After having read to him his Miranda rights, Brown indicated he understood those rights and signed a written waiver. No threats or promises were made, no violence was committed, and no hopes of leniency or reward were offered.
Applying the facts herein to the analysis in Brown, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, the lower court judge determined that Brown's confession was an act of his free will and was properly admitted at trial. Upon review of the record there exists no evidence of coercion or mistreatment on the part of the officers pursuant to Brown's arrest and confinement. This Court holds that the confession was a voluntary act and admissible during the trial. Booker v. State, 449 So.2d 209 (Miss. 1984) cert. den. 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159. Palmer v. State, 427 So.2d 111 (Miss. 1983).

III.

Did the admission of the statements by the codefendants violate each defendant's right to confrontation of witnesses?
Appellants contend the admission of their statements denied them their constitutional right to confrontation, since both statements incriminated each appellant and since neither appellant took the stand. For this contention they rely on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (Because of the substantial risks that the jury, despite instructions to the contrary, looked to the incriminating extra judicial statements in determining petitioner's guilt, admission of a non-testifying codefendant in a joint trial violated the petitioner's right of cross-examination secured by the confrontation clause of the Sixth Amendment). See also, Langston v. State, 373 So.2d 613 (Miss. *479 1979); Brown v. State, 340 So.2d 718 (Miss. 1976).
This Court notes the directives set forth in Brown, 340 So.2d 718 at 721:
[T]he prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a codefendant (implicating the defendant) during the State's case in chief, since it could not be known whether the codefendant would testify after the State rested. The statement, if admissible, should be admitted only after the codefendant took the stand and was subject to cross-examination by the defendant, and, when admitted, the trial judge should immediately, and at such other times as the statement might be referred to, tell (orally instruct) the jury that the statement must not be considered against the defendant. Likewise, if so requested by the defendant, the trial judge must instruct the jury in writing.
Applying the Brown decision, these defendants seek reversal because the codefendant's statements were introduced during the state's case in chief. However, prior to admission of the confession the trial court had a hearing outside the jury's presence to determine the admissibility of the codefendants' confessions. If, in such a case, the trial judge determines that "particularized guarantees of trustworthiness" are present, that is, that the statements corroborate one another on the core details of the crime, then, the Brown procedure need not be followed.
Authority for this exception to the Brown rule is found in Ohio v. Roberts, 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980), the United States Supreme Court held that the confrontation clause of the federal constitution was not violated in introduction of testimony of a witness at a preliminary hearing not produced at the defendant's trial.
The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant... .
The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." Snyder v. Massachusetts, 291 U.S. [97] at 107, 78 L.Ed. 674, 54 S.Ct. 330 [at 333], 90 A.L.R. 575. The principle recently was formulated in Mancusi v. Stubbs:

"The focus of the Court's concern has been to insure that there `are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' Dutton v. Evans, supra, [400 U.S. 74] at 89, [27 L.Ed.2d 213, 91 S.Ct. 210 [at 220]], and to `afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' California v. Green, supra, [399 U.S. 149] at 161, [26 L.Ed.2d 489, 90 S.Ct. 1930 [at 1936]]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these `indicia of reliability.' 408 U.S. [204] at 213, 33 L.Ed.2d 293, 92 S.Ct. 2308 [at 2313]."
The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." Mattox v. United States, 156 U.S. [237] at 244, 39 L.Ed. 409, 15 S.Ct. 337 [at 340]. This reflects the truism that "hearsay *480 rules and the Confrontation Clause are generally designed to protect similar values," California v. Green, 399 U.S. at 155, 26 L.Ed.2d 489, 90 S.Ct. 1930 [at 1933], and "stem from the same roots." Dutton v. Evans, 400 U.S. 74, 86, 27 L.Ed.2d 213, 91 S.Ct. 210 [218] (1970). It also responds to the need for certainty in the workaday world of conducting criminal trials.
In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
The instant case is one of those "other cases" in which the evidence must be excluded absent a showing of "particularized guarantees of trustworthiness." This Court now addresses the facts to determine if that guarantee of trustworthiness is present.
In the case sub judice during the state's case in chief, both defendants took the stand outside the presence of the jury to challenge the admissibility of the interlocking confessions. Both defendants were subject to direct and cross-examination at this point. Upon admission of the confessions, the jury was duly instructed that each confession could not be considered as evidence against the other defendant. Under this set of facts, this Court concludes that the defendants' right to confrontation was not violated. But see Mitchell v. State (Miss. No. 55,746, decided September 24, 1986) (not yet reported). (No particularized guarantees of trustworthiness were found present, failure to follow Brown required reversal in this case.)
The State submits that the case at bar is most similar to Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). In Parker the three defendants were jointly tried and each of their interlocking confessions was admitted into evidence. None of the defendants took the stand. And although each of the confessions was subjected to a process of redaction in which references by the confessing defendant to the other defendants were replaced with the words "blank" or "another person," the United States Supreme Court noted that the confessions were nevertheless "such as to leave no possible doubt in the jurors' minds concerning the person[s] referred to". 442 U.S. at 65, 99 S.Ct. at 2135, 60 L.Ed.2d at 719. In affirming the convictions, the United States Supreme Court discerned:
[T]he incriminating statements of a codefendant will seldom, if ever, be of the `devastating' character referred to in Bruton when the incriminated defendant has admitted his own guilt. The right protected by Bruton  the Constitutional right of cross-examination," id., at 137, 20 L.Ed.2d 476, 88 S.Ct. 1620 [at 1628]  has far less practical value to a defendant who has confessed to the crime that to one who has consistently maintained his innocence. Successfully impeaching a codefendant's confession on cross-examination would likely yield small advantage to the defendant whose own admission of guilt stands before the jury unchallenged. Nor does the natural "motivation to shift the blame onto others," recognized by the Bruton Court to render the incriminating statements of codefendants "inevitably suspect." id., at 136, 20 L.Ed.2d at 476, 88 S.Ct. at 1620, require application of the Bruton rule when the incriminated defendant has corroborated his defendant's statements by heaping blame onto himself.
442 U.S. 72, 99 S.Ct. 2132, 60 L.Ed.2d 723, but see Lee v. Illinois, ___ U.S. ___, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) [subjects upon which the two confessions did not "interlock" could not be characterized as irrelevant or trivial.]
The confessions in the case at bar are almost identical in every detail. Furthermore, *481 each defendant admitted his own guilt. This Court concludes that there is a showing of "particularized guarantee of trustworthiness" to permit introduction during the state's case in chief.
Finding no reversible error in this record, this Court affirms the convictions of Billy Gene Seales and Ricky Brown.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P. JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.