512 So.2d 1246 (1987)
Harrison JOHNSON, Jr. and Gregory Tubby
v.
STATE of Mississippi.
No. 56954.
Supreme Court of Mississippi.
August 19, 1987.
Rehearing Denied September 16, 1987.
Certiorari Denied November 30, 1987.
*1247 Laurel G. Weir, Thomas L. Booker, Weir & Booker, Philadelphia, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and GRIFFIN, JJ.
Certiorari Denied November 30, 1987. See 108 S.Ct. 462.
DAN M. LEE, Justice, for the Court:
Gregory Tubby, Harrison Johnson, Jr., and Arlene Johnson Tubby were indicted on February 6, 1985, for the November 3, 1984 murder of Edward John, who was Harrison's and Arlene's stepfather. John was killed by a blow to the head. The three were initially tried in February 1985 with the result being a mistrial, and they were tried again on July 15-17, 1985. Gregory Tubby and Harrison Johnson were found guilty of aggravated assault and sentenced to ten years' imprisonment. Arlene Johnson Tubby was found guilty of simple assault. The judge postponed sentencing Arlene due to her pregnancy and imminent delivery, and since she is not an appellant here her sentence does not appear in this record. Gregory Tubby and Harrison Johnson appeal, assigning as error:
1. IT WAS ERROR TO CONVICT AND SENTENCE OR EVEN TRY HARRISON JOHNSON, JR., A MINOR, WITHOUT CERTIFICATION FROM THE YOUTH COURT OR COMPLYING WITH LAW IN MAKING SUCH SENTENCE.
2. THE COURT ERRED IN GRANTING INSTRUCTIONS CONCERNING THE FACT THAT APPELLANTS COULD BE FOUND GUILTY OF LESSER OFFENSES SUCH AS AGGRAVATED ASSAULT OR SIMPLE ASSAULT WHEN THE INDICTMENT WAS THAT OF MURDER AND ALLOWING SUCH A CONVICTION FOR SUCH LESSER INCLUDED OFFENSES TO STAND.
3. THE COURT ERRED IN ADMITTING INTO EVIDENCE THE ALLEGED CONFESSIONS AND STATEMENTS OF APPELLANTS TO OFFICERS.
4. IT WAS ERROR FOR THE COURT TO ALLOW INTRODUCTION OF CONFESSIONS OF BOTH APPELLANTS AND IN NOT GRANTING A SEVERANCE.
5. IT WAS ERROR FOR THE COURT NOT TO ALLOW ADDITIONAL CHALLENGES BY APPELLANTS AND IT WAS ERROR FOR THE COURT TO NOT DISMISS FOR *1248 CAUSE JUROR GLENDA MYERS HERRINGTON.
6. THE COURT ERRED IN OVERRULING THE MOTION OF NEW TRIAL, GRANTING THE INSTRUCTIONS FOR THE STATE OVER OBJECTION OF APPELLANTS AND REFUSING THE INSTRUCTIONS FOR APPELLANTS, AND THE VERDICT OF THE JURY IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE LAW AND EVIDENCE AND NOT SUPPORTED BY ANY LAW OR EVIDENCE AND THE COURT ERRED IN NOT PERMITTING THE SELF DEFENSE OFFERED BY APPELLANTS.
7. IT WAS ERROR FOR THE COURT NOT TO HAVE AN INTERPRETER.
Harrison Johnson (Harrison) and Arlene Johnson Tubby (Arlene) are brother and sister. At the time of the murder of Edward John, Arlene was living with Gregory Tubby (Gregory), whom she has since married. Arlene and Gregory had one child, Chelsey, at the time of the incident, and at the time of trial Arlene was pregnant with their second child. Mary John is the mother of Harrison and Arlene. In 1981 Mary married Edward John. Theirs was, apparently, a stormy marriage, and a proffer made at trial of medical records indicated that Mary John had been hospitalized on several prior occasions as a result of being beaten by Edward.
On the night of Friday, November 3, 1984, Gregory, Arlene and Harrison were at the trailer shared by Mary and Edward to celebrate Arlene's birthday. Gregory and Arlene's daughter, Chelsey, was also there. At around midnight, Arlene, Gregory, Harrison, Edward and Mary were sitting around the kitchen table drinking when Mary stood up and announced that she was going to bed. Edward objected to Mary leaving, and hit her in the jaw. At that point, Gregory told Edward not to hit Mary, and a fight broke out between them. Ultimately, Arlene and Harrison were involved in the altercation, but not Mary, who retired to her bedroom.
A witness who lived across the street from Edward and Mary's trailer testified that at about 1:00 a.m. she saw three people chasing another person out of the trailer park. This witness, Clyde Thompson, said that one of them had a broom (he thought it was the female) and another had a baseball bat. As they caught up with the man they were chasing, one of the attackers hit him over the head with the baseball bat and he fell. After he fell his assailants kicked him for a few minutes; then they left and returned to the trailer park. A few minutes later, two of them returned and kicked him again. According to Thompson the victim never moved after he fell. Thompson called the police at about 1:30 a.m.
The defendants testified that the fight was primarily a wrestling match. According to them, Edward pushed Gregory into the stove and pushed Harrison out the door of the trailer. The fight continued outside for a few minutes; then Edward returned to the trailer. Their testimony differed at this point  either Edward stated that he was going for his gun, or they thought he was going for it. Arlene, Gregory and Harrison followed him back into the house because they were worried about what he might do to Mary and Chelsey. The scuffle then moved back outside the trailer, with Arlene joining in to pull Edward off Harrison by his hair. Edward allegedly provoked the continuation of the fight by urging the three to "Come on. Come on." However, all three of the defendants testified that neither they nor Edward were armed, and that they ended the fight with Edward conscious, sitting up either in the street or nearby. There was some testimony to indicate that he could have been subsequently hit by a car.
After leaving Edward, the three defendants returned to the trailer to watch television. About thirty minutes later, Choctaw police came to the trailer and told them that Edward was dead. According to the pathologist, Dr. Robert Jarrett, an autopsy performed on John showed that he died *1249 from extensive bleeding caused by a fractured skull. His body also reflected multiple superficial lacerations and several blows to the head. A blood alcohol test performed on the body showed Edward's level to be .234.
Gregory Tubby was arrested at the scene around 2:00 a.m. on Saturday, November 3. He signed a waiver of rights form, said that Edward and his mother-in-law had been fighting, and refused any further statement. He was placed in the drunk tank, a 14' by 17' room with no mattresses. Harrison was arrested later that morning at about 4:30  5:00 a.m. He also signed a waiver of rights form, but refused to make a statement. Harrison gave his date of birth as 7/15/66, which would have made him 18 years of age at the time of the crime. However, two days later police learned from his mother that his birth date was actually 7/15/67; thus, he was only 17. Harrison was put in an individual cell until it was determined that he was a juvenile; then he was transferred to a juvenile cell.
Both Harrison and Gregory are Choctaw Indians who speak Choctaw as their primary language. They were kept in jail over the weekend and several of their relatives and friends testified that they were denied visitation with them. The gist of this testimony was that the visitors were told that they would not be permitted to see the men until they had made a statement. Gregory testified that he was kept in the drunk tank with no bed, shower or change of clothes. Harrison said that the police would not let him make a phone call. The police and sheriff denied refusing visitation and alleged that the families were at the jail over the weekend, although they could not testify that they actually witnessed any visiting. They also denied any deliberate purpose in keeping Gregory in the drunk tank, but said it was necessary due to overcrowding.
Later on Saturday, the 3rd, Arlene came to the jail to inquire about her brother and boyfriend. According to the police, she smelled of alcohol and was very upset. They said that she asked why they were keeping Gregory and Harrison, and said that they hadn't done any more than she had. Arlene admitted the visit, but denied making the statement. She was told to go home, but was subsequently arrested on Monday.
On Monday, November 5, Gregory and Harrison signed another waiver of rights form, but, again, no statement was taken. Finally, on November 6 statements were given by both Harrison and Gregory. Gregory's statement was as follows:
After being advised of my Rights by Investigator Bobby Anderson and Lt. R.L. Wilcher, I give the following statement:
On the night of 3rd November 1984, I was at the Home of Edward John and Mary John at 401 Lewis Avenue, Trailor number one.
Edward hit me in the face and shoved me and he ran out front door and I followed him outside. I grabbed his foot and he almost fell down, but he kept going towards the road. I followed him on up the road and Edward was on the ground, I kicked him on his head. Arlene and I left him laying in the road, we went back to trailor and Harris was on the road with Edward. I hit him several times with my fist during the fight.
I went in Trailor and sit down. When Police came I ran to rear of Trailor, I hid behind a closet door.
Police Arrested me and put me in a Police Car. I am left handed.
Harrison's statement read:
After being advised of my rights by Investigator Bobby Anderson and Larry Myers, I make the following statement: On the night of 3rd November 1984, I went to my Mother house on Lewis Avenue at approximately 0115 hours. We had a fight with Edward John my Stepfather. Gregory Tubby, my Sister, Arlene Johnson and my self. Edward hit Gregory and we all got got on him, I hit Edward and he fell out the back door and I fell out also. Gregory jumped out of trailor and grabbed Edward and Arlene was pulling Edwards hair. Edward got aloose and run inside of house, we went in after him. And Edward John ran out *1250 the front door, we chased him out front Gregory, Arlene and I.
Gregory caught Edward and we all got him again and Edward said he quit he didn't want to fight no more. I hit him several times and gregory hit him several times. I hit him several times with a broom handle.
The reason I got into it with them I was tired of Edward Whipping my Mother. I was trying to stop it.
The defendants testified that they were allowed to visit their families after they made these statements.
Prior to trial the defendants moved to suppress the statements, for a severance, and for an interpreter. The motions were denied. On the motion for an interpreter the court filed with this record a transcript of the testimony at the previous trial. The transcript revealed that Harrison went through tenth grade and Gregory graduated from high school. Both had studied English. Additionally, the trial judge noted that they were fluent and conversant in English and appeared to have no trouble understanding it. Prior to the first trial Harrison also filed a motion for a hearing before a Youth Court Judge. The disposition of this motion is not reflected in the record.
Harrison and Gregory were indicted for murder. After the evidence was heard, the State requested an instruction on aggravated assault. The defendants objected, but withdrew it if the court would also grant their simple assault instruction. Thereafter the court granted the aggravated and simple assault instructions without objection. After approximately 2 1/2 hours of deliberation, the jury found Harrison and Gregory guilty of aggravated assault. At the later sentencing, the trial judge noted that the maximum sentence was 20 years, but in view of their youth he only sentenced the defendants to ten years.

I. WAS IT ERROR TO TRY HARRISON JOHNSON WITHOUT CERTIFICATION FROM THE YOUTH COURT?
Miss. Code Ann. § 43-21-151 (Supp. 1986) gives the Youth Court jurisdiction in "all proceedings concerning a delinquent child... ." For purposes of the Act, § 43-21-105(i) defines "delinquent child" as "a child who has reached his tenth birthday and who has committed a delinquent act." A "delinquent act," pursuant to § 43-21-105(j), is an act designated as a crime "other than offenses punishable by life imprisonment or death." [emphasis added] Thus, this Court has long recognized that juveniles who commit offenses that are punishable by either the death penalty or life imprisonment do not fall within the jurisdiction of the youth court. Winters v. State, 473 So.2d 452 (Miss. 1985); Carter v. State, 334 So.2d 376 (Miss. 1976); Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958).
A new wrinkle is added, however, where a juvenile is charged with an offense carrying a potential life sentence, but is convicted of something else. Such were the facts in Williams v. State, 459 So.2d 777 (Miss. 1984), where a sixteen-year-old girl was indicted for murder, but plead guilty to manslaughter. In determining whether the youth court had jurisdiction over the case, Justice Roy Noble Lee wrote for the Court:
We think the sounder rule has been stated and followed in those states holding that once jurisdiction is acquired, it is not lost by accepting a plea to a lesser-included offense or conviction for a lesser-included offense, even though such offenses would not originally confer jurisdiction in the circuit court. It would be a mockery of the law and justice to hold that when a juvenile is indicted for murder that the circuit court must proceed with a trial on the murder charge, or lose jurisdiction, if a plea or conviction for a lesser-included offense occurs.
Id. at 779.
We believe that the Williams rationale should apply here. To hold otherwise would cause the defendant and the trial court to await the outcome of the trial before determining whether the circuit court's jurisdiction was proper. Thus, *1251 since the indictment for murder properly conferred jurisdiction upon the circuit court, we hold that there is no reversible error in that court's sentencing of Harrison Johnson for aggravated assault.

II. DID THE COURT ERR IN GRANTING AN INSTRUCTION ON AGGRAVATED ASSAULT?
The law in Mississippi is that aggravated assault is not a lesser-included offense within the crime of murder. Scott v. State, 60 Miss. 268 (1882). The State concedes this, but argues that, in this case, murder resulted from the aggravated assault, and the evidence supporting conviction of either crime was identical. However, we need not reach this discussion, because counsel for the defendants told the trial court that if the simple assault instruction was given, which was done, the defendants would withdraw their objection to the aggravated assault instruction. In light of this withdrawal of objection we cannot reverse this case on the inclusion of the instruction on aggravated assault.

III. DID THE COURT ERR IN ADMITTING THE STATEMENTS?
The appellants' arguments under this assignment of error are numerous: they include the appellants' ages, their being held incommunicado, an alleged illegal arrest, lack of proof of the corpus delicti, continuing interrogation after the appellants refused to talk, refusal to write down earlier statements, and lack of education. Thus, the appellant argues, the State failed to prove the admissibility of the confessions beyond a reasonable doubt.
The trial judge made extensive findings in his overruling of the motion to suppress the appellants' statements, set out in pertinent part, below:
In this case, the evidence indicates that these three  two Defendants  two male Defendants, were arrested on November the 3rd, 1984, and that they were confined in the jail in Neshoba County... . In the case of the statement of Gregory Tubby, Gregory Tubby, according to the evidence, was 21 years old. The evidence indicates that he received an education, and if I remember correctly, a 12th grade education. There is evidence that he was confined in the drunk tank. The evidence is in conflict regarding the sleeping arrangement in the drunk tank, and although argument is made that the confinement in the drunk tank had affect upon the voluntariness of this statement, the Defendant did not testify that being confined in that drunk tank had any affect (sic) upon him in giving that statement on the 6th day of November. The evidence is in conflict regarding that statement, and whether or not he had asked leave of those officers and told them that he wanted to make a statement. The argument is made that he was a Choctaw Indian, 17 years old. The Mississippi Supreme Court has addressed itself upon the issue of age, and upon the issue of mental ability to freely and voluntarily make a statement. In those cases, the Trial Judges were assisted by the testimony of psychologists, school teachers, and others as to the ability to understand. I only have, in this case, the testimony of the three Defendants, and the argument that they are Choctaw Indians and cannot understand. This Court is required, in the case of a 17 year old, to look at the totality of the circumstances. This Court does not accept the argument that Choctaws cannot understand as well as whites, or that Harrison Johnson did not understand simply because he was Choctaw. To the contrary, I observed Harrison Johnson testify on yesterday. He was very alert, very intelligent, and I was very impressed about his understanding of the English language, and his ability to express himself in English, although he stated that English was a language secondary to the Choctaw language. Therefore, the Defendant, the State having the burden of proving the admissibility of these statements beyond reasonable doubt as to being freely and voluntarily made, this Court is of the opinion, considering the totality of all the circumstances in this case, the testimony that this Court has contested [sic] the voluntariness of the *1252 evidence, or at least the lack of evidence, is of the opinion that the confessions are competent evidence, with the right allowed, of course, for the Defendants to develop the same facts and circumstances for the jury to place whatever weight they desire upon the statements.
"Once the trial judge determines that a confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming evidence." Cabello v. State, 490 So.2d 852, 856 (Miss. 1986). In Cabello, the confession of a 15-year-old boy was upheld as admissible, thus negatively addressing the appellants' assertion here that Harrison's confession should have been excluded because he was 17.
Another point raised by the appellants is their that their arrest was illegal. That allegation is made on page 11 of the Appellant's Brief; however, it is simply a bare statement, not supported by authorities in either the initial brief or the reply brief. Neither was an objection raised at trial to the arrest. Therefore, the standard of review for a confession obtained after an illegal arrest, see Carter v. State, 473 So.2d 471 (Miss. 1985), need not be applied.
The appellants also stated in their brief that "The corpus delicti must be proven before a confession can be received in evidence." Assuming that this is an assertion that the corpus delicti was not adequately proven at trial, we note that no objection was raised to the admission of the statements on this ground at trial. Even if we were to consider this point, however, there would be no error. The order of proof was as follows: Clyde Thompson, the neighbor who testified to witnessing the attack; L.J. Pace, a Philadelphia policeman who testified to finding Edward John in the street with no vital signs, and Bobby Anderson, Philadelphia's Chief Investigator, who also testified as to the condition of Edward's body, and through whom the statements were introduced. The general requirements for proof of corpus delicti may be described as "proof, first, that a certain result has been produced ... and, second, that someone is criminally responsible for the result." 30 Am.Jur.2d Evidence § 1140 (1967). As we stated in Burkhalter v. State, 302 So.2d 503, 504-05 (Miss. 1974), while the general rule mandates proof of corpus delicti before introduction of the confession, the rule is not inflexible. Thus, while the better practice would have been to have the pathologist testify before the admission of the statements, we find that the failure to do so in this case did not constitute reversible error.
The appellants also assert that interrogation continued after they refused to talk. The record does not bear this out, since after the initial refusal to give a statement other waivers were signed by Harrison and Gregory before the subsequent statements were made. This is akin to the situation in Neal v. State, 451 So.2d 743 (Miss. 1984), where the accused stopped the interrogation at one point, only to give a complete statement  after a waiver  the next day. "Notwithstanding an earlier valid waiver of his privilege against self-incrimination and his right to counsel, an accused may revoke that waiver ... Following such a revocation, the accused may re-waive his rights." Id. at 755.
The next argument against admissibility is that the officers did not include into the statements the original remarks of Gregory regarding the fact that Edward was hitting Mary. Even if the failure to include this statement in Gregory's confession was error, it was harmless in light of the fact that Harrison's statement included the sentence: "The reason I got into it with them I was tired of Edward whipping my Mother. I was trying to stop it."
The appellants also assert their lack of education as a barrier to the admissibility of their statements. The record shows that Harrison went through the tenth grade and Gregory graduated from high school. Howard Neal had an I.Q. of 54 and never went beyond the second grade, yet this Court refused to reverse the trial judge's ruling on the voluntariness of his confession. 451 So.2d at 756. We reach the same result here.
*1253 The most damaging argument against admitting these statements is the uncontradicted testimony that neither Harrison Johnson nor Gregory Tubby saw a friend or relative from the time they were incarcerated on November 3rd until they gave their statements on November 6th. Although several officers denied telling the visitors that they could not see the young men, only one, Sheriff Waddell, actually testified that they had visitors. He later recanted that testimony, saying, "No, I didn't never make that statement that they did visit. I don't know. They were just there."
Incommunicado detention, in itself, will not invalidate a confession, but it may suggest strongly that the statement was involuntary. Thus, in In Interest of Dollar, 293 So.2d 458 (Miss. 1974), this Court reversed the conviction of a youth who was confined without access to friends or family until he confessed, and then was denied the opportunity to testify on the voluntariness of his statement. "It seems doubtful, to state the matter as mildly as possible, that a confession obtained under these circumstances from a 14-year-old boy can be described as `volunatry.'" Id. at 459.
Here, of course, we deal with a 17-year-old and a 22-year-old. We also have the extensive findings of the trial court  made after a full hearing on the voluntariness of the confessions  in which the trial judge found that they were admissible. Nevertheless, we deplore the actions, if any, of the law enforcement personnel involved in this case in denying these young men any access to family or outside help. Even the most brave among us could be overwhelmed by a three-day confinement in jail, surrounded by hostile strangers, and denied the support of our loved ones. These tactics might be appropriate in the gulag, but they are unacceptable in law enforcement in this state.
However, we are constrained in this case to affirm the trial court's finding that the statements elicited from Harrison Johnson and Gregory Tubby were voluntary in the absence of any evidence that he was manifestly in error. While the incommunicado detention degrades our confidence in this finding, we still cannot say that the overwhelming weight of the evidence points towards the confessions being involuntary. Thus, we do not reverse on this assignment of error.

IV. WAS IT ERROR FOR BOTH CONFESSIONS TO BE ADMITTED AND FOR THE COURT TO DENY A SEVERANCE?
Gregory's confession stated, basically, that Edward started a fight between them, that the fight continued outside the trailer, that Edward fell to the ground and Gregory kicked him, that Gregory and Arlene left Edward on the ground with Harris, and that Gregory hit him several times with his fist during the fight. Harrison's statement was that Gregory, Arlene and Harrison got into a fight with Edward, that they chased him outside the trailer, that both he and Gregory hit him several times, and that Harrison hit him with a broom handle. Thus, each of the defendant's statements reiterated the same story of the incident: that it was a fight between Edward and all of the defendants. Neither of the confessions particularly implicated the other defendant more than the person making the statement. Both Harrison and Gregory testified at the suppression hearing and at trial. Gregory's testimony at trial corroborated the story of a fight, except that Gregory testified that his only contact with Edward was wrestling and that he left him sitting by a tree. Harrison testified at trial that no one involved in the fight had a weapon, and that they left Edward sitting by his car. Both men testified that the fight started when Edward hit Mary, and Gregory and Arlene added that Edward said at one point that he was going for his gun.
The appellants cite Brown v. State, 340 So.2d 718 (Miss. 1976) for the proposition that the State should not have admitted the co-defendants' statements in its case in chief, since they were not properly admissible until after the defendants took the stand and were subject to cross-examination. The State correctly notes that no objection was made to the admission of the *1254 statements at trial on this basis. Furthermore, we may factually distinguish this case from Brown on several counts. First, the statements introduced in Brown consisted of an incriminating letter written from one co-defendant to another which incriminated both of them. In this case there are two statements, one from each appellant, in which they acknowledge the other's involvement in the crime, but primarily implicate themselves. Secondly, as recognized in the later case of Seales v. State, 495 So.2d 475 (Miss. 1986), if the trial court determines at a suppression hearing prior to trial that the statements contain "particularlized guarantees of trustworthiness ... that is, that the statements corroborate one another on the core details of the crime, then the Brown procedure need not be followed." Id. at 479. Here, a suppression hearing was held, during which the statements were examined. It is true that the specific finding referenced in Seales was not made; however, it is equally clear that it was not requested since the defendants did not raise this issue. Had it been raised, it appears that the statements would be found to "corroborate one another on the core details of the crime."
The nature of these statements is not of the sort of "rank post-arrest fingerpointing" condemned in Mitchell v. State, 495 So.2d 5 (Miss. 1986) and Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Nor is it the reversible error found in Cruz v. New York, ___ U.S. ___, 107 S.Ct. 1714, 95 L.Ed.2d 162, where the confession of a non-testifying defendant was admitted. Finally, even though the jury was not instructed to consider each confession only against its maker, the record reflects that no such instruction was requested. Thus, this cannot be assigned as error. Newell v. State, 308 So.2d 71 (Miss. 1975).
As to the failure to grant a severance, the general rule is that in non-capital cases the trial judge has discretion in refusing to sever cases. Rigby v. State, 485 So.2d 1060 (Miss. 1986). Therefore, "where all the evidence at trial went to the guilt of both appellants and not to one more than the other," it is not error to try the defendants jointly. Blanks v. State, 451 So.2d 775 (Miss. 1984). Also, where the testimony of one defendant "did not tend to exculpate himself at the expense" of another and there "does not appear to be a conflict of interest among the co-defendants," severance is not required. Duckworth v. State, 477 So.2d 935, 937 (Miss. 1985).
Such is the case here. The testimony of all of the defendants was that a fight broke out between them and Edward over his treatment of Mary John. All of the defendants admitted being part of the fight  none more so than any other. Their defense was self-defense and their assertion was that they left Edward outside the trailer, very much alive. The statements were properly admitted, and the evidence in this case did not mandate severance of the trials.

V. WAS IT ERROR FOR THE COURT NOT TO ALLOW THE APPELLANTS ADDITIONAL CHALLENGES AND NOT TO DISMISS FOR CAUSE JUROR GLENDA MYERS HERRINGTON?
Miss. Code Ann. § 99-17-3 (1972) provides that "In capital cases the defendant and the state shall each be allowed twelve peremptory challenges. In cases not capital the accused and the state each shall be allowed six... ." The defendants here were charged with murder, not capital murder. However, Miss. Code Ann. § 1-3-4 defines "capital case" as "criminal cases, offenses and crimes punishable by death or imprisonment for life... ." (Supp. 1986) (emphasis added) Wilburn v. State, 356 So.2d 1173, 1176 (Miss. 1978), announced that "All statutory procedural safeguards that are now a part of the laws enacted by the legislature involving so-called `capital' crimes or offenses ... . still are in full force and effect even though the death penalty has been removed from some of those offenses... ." Thus, if these defendants had been tried separately, each of them would have been entitled to twelve peremptory challenges.
*1255 The fact that they were tried jointly does not change this result. Miss. Code Ann. § 99-17-5 (1972) states that "Defendants tried jointly must agree in their challenges made without cause, and shall be entitled to only the number to which one defendant is entitled." Therefore, the three defendants were entitled to no more than twelve challenges. In overruling their motion for 36 challenges, the trial court increased the number of challenges for each side to 15. Thus, the defendants received more than the statutorily mandated number of challenges, and this part of their assignment of error has no merit.
The second part of this assignment concerns juror Glenda Myers Herrington. During the selection of the jury the following exchange occurred:
BY MR. ALFORD: We would most respectfully show unto the Court the Glenda Myers Herrington stated on voir dire that she was a first cousin to Larry Myers, who is an inspector with the Mississippi State Highway Patrol, who was named by the District Attorney as one of the prospective witnesses. We would respectfully show she should be challenged for cause.
BY THE COURT: The District Attorney has stated that Larry Myers would not be called as a witness. It is true that the juror, prospective juror, did state that she was a first cousin to Larry Myers. This was developed by Mr. Alford, but he did not question her as to her ability to pass upon the evidence and law, nor did he ask any additional questions. My observation of this lady indicates that she is a grown adult, so I assume from that that she is not a member of the same household with her first cousin.
The list of jurors selected does not include Ms. Herrington, nor does the record reflect by what means she was excluded from the panel. Larry Myers later testified at the suppression hearing without objection, but he did not testify at trial.
"The general rule is that failure to excuse for cause is error when appellant has exhausted his peremptory challenges." Billiot v. State, 454 So.2d 445, 457 (Miss. 1984), cert denied, 469 U.S. 1230, 105 S.Ct. 1232, 84 L.Ed.2d 369 (1985). However, "[t]he trial court will not be put in error because of failure to permit a challenge for cause as long as peremptory challenges remain unused." Gilliard v. State, 428 So.2d 576, 580 (Miss.), cert denied, 464 U.S. 867, 104 S.Ct. 40, 78 L.Ed.2d 179 (1983). In this case the lack of evidence in the record as to how Ms. Herrington was removed from the panel makes it impossible to determine whether peremptory challenges remained.
Furthermore, it does not appear that Ms. Herrington should have been removed for cause. It was not determined that she would have been prejudiced by the testimony of Larry Myers, who in any event did not testify before the jury. There is no merit to this assignment of error.

VI. DID THE COURT ERR IN OVERRULING THE MOTION FOR A NEW TRIAL, IN GRANTING THE STATE'S INSTRUCTIONS AND REFUSING THE DEFENDANTS', AND WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE LAW AND EVIDENCE, AND DID THE COURT ERR IN NOT PERMITTING THE DEFENSE OF SELF-DEFENSE?
The trial court allowed evidence of self-defense to be presented to the jury, and also allowed the defendants to instruct the jury on self-defense. In fact, the trial judge admitted five instructions concerning their right of self-defense, and the two instructions refused by the trial court were properly refused on grounds of repetition.
The State's version of the incident, as reflected through the testimony of the eyewitness, Thompson, was that Harrison, Gregory and Arlene chased Edward out of the trailer park, caught him, and beat and kicked him to death with a baseball bat, a broom handle and feet. The defendants admitted the altercation, but testified that it started after Edward hit Mary, that Edward egged it on, and that they were in fear of his getting a gun. They also testified *1256 to the use of only their bare hands, and said that they left Edward alive, sitting outside. All of this evidence was presented to the jury, the jury was properly instructed, and apparently it failed to believe the self-defense theory. The jury was instructed that aggravated assult includes "the willful, unlawful, felonious, and purposeful causing of bodily injury to a human-being with a deadly weapon, or other means likely to produce death or serious bodily harm." (emphasis added) This parallels the statutory language of Miss. Code Ann. § 97-3-7 (Supp. 1986) Thus, the jury could have believed all of the defendants' story, but not found self-defense proper in this case where three people beat an admittedly unarmed man. There is no merit to this assignment of error.

VII. WAS IT ERROR FOR THE COURT NOT TO PROVIDE AN INTERPRETER?
Miss. Code Ann. § 11-7-153 (1972) provides that "Interpreters may be sworn truly to interpret, when necessary." Such an aid was deemed necessary in Morris v. Phillips, 157 Miss. 452, 128 So. 336 (1930), where the appellant was "unable to communicate adequately in writing except in respect to the simpler matters of his daily life, and that in matters of any considerable detail or complication he [was] able to express himself completely only through translations... ." This is not the situation here.
The transcript of the first trial revealed the defendants could read, write and perform mathematical calculations at the direction of the trial judge. Additionally, in several instances the record of this trial reveals Johnson and Tubby giving complex, coherent responses to questions asked of them. There was never any indication that they could not comprehend precisely what was happening to them or what was being asked of them. We find no reversible error in the failure to provide an interpreter.
Finding no reversible error in the trial of this case, we affirm the conviction and sentence of Harrison Johnson and Gregory Tubby rendered by the Circuit Court of Neshoba County on July 19, 1985.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.