# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00393-SCT

*ZACHARY L. HARRINGTON AND MANRESE ANTHONY LONG*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2000 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT B. McDUFF |
| | WILLIAM F. TRAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANN LAMAR |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/27/2001 |

### BEFORE McRAE, P.J., SMITH AND MILLS, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. Zachary L. Harrington and Manrese Anthony Long were convicted in the DeSoto County Circuit Court of conspiracy to commit robbery with a deadly weapon, robbery with a deadly weapon, and manslaughter, as a lesser-included offense of murder, for which they had been indicted. The jury was unable to agree on a sentence, and the court sentenced each defendant to serve twenty years for manslaughter consecutive to twenty years for the robbery conviction consecutive to five years for the conspiracy conviction. Aggrieved, the defendants timely perfected this appeal.

## FACTS

¶2. In the early morning hours of February 6, 1999, Officer Omar Elkouz of the DeSoto County Sheriff's Department was on routine patrol when he found a man's body lying in the road. The body was lying face down on the pavement. The man's pants were around his ankles, and he was wearing no socks or shoes. The body was later identified as that of Jacky Harwell. He had died from a contact gunshot wound to the left ear. A shell casing was found at the scene approximately five feet from the body.

¶3. No identification was found on the body; however, a letter found at the scene was addressed to Jacky Harwell. Andrew Perpener, Harwell's cousin, reported Harwell missing on February 8. He later identified the body as Harwell's.

¶4. Harwell's son, Chris, testified that around 11:00 p.m. on February 5 he overheard his father talking on the phone and assumed he was answering a page, since the phone had not rung. Chris heard Harwell say,

"All right. I'm on my way." Harwell then left the house. Telephone and pager records revealed that at approximately 11:11 p.m. on February 5, Harwell received a page from a number listed to the residence of Eric Drake.

¶5. Testimony revealed that Drake met Jacky at a church near Drake's residence, and they drove to a nearby lake and parked. Drake originally told the investigators a bogus story that he and Harwell had been victims of an attempted robbery. While directing the officers to the location of the alleged robbery, Drake admitted that he knew where Harwell's automobile was located. He then took the officers to the car which was located not far from his house. Drake was subsequently arrested. He gave a statement to the police which led to the arrest of Long, who lived at the Drake residence, and Harrington.

¶6. Officers recovered a .9 mm pistol belonging to Harrington's stepfather at Harrington's residence. In his statement, Harrington admitted that on the evening of February 5, he had taken the pistol for self-protection. Laboratory analysis revealed that Harwell was shot with this pistol.

¶7. The statements of Harrington and Long revealed the chain of events that led to Harwell's murder. According to Harrington, he and Long were at the lake splitting a beer when they saw Harwell's car. They walked to the car and saw Drake sitting in the passenger seat and Harwell in the driver's seat with his pants down masturbating. Harrington and Long entered the car. Harrington admitted that Harwell had seen the gun in the front of his pants. According to Harrington, Long told Harwell to drive. They ended up in a deserted area where Harwell got out of the car with his pants still around his ankles in order to urinate. According to Harrington, Long left the car and robbed Harwell at that time. Drake was also outside of the car at this point. As Harrington was getting out, Drake grabbed Harrington's pistol, raised the gun up, and shot one time. Harwell fell to his knees then on forward to his face. The three got back in the car and left. They split the money receiving a little over $100 each. Harrington claimed that the robbery was Long's idea.

¶8. Long's statement was similar to Harrington's, but both defendants point to arguably significant differences. Long stated that as he and Harrington approached Harwell's car, Harrington said, "Stick 'em up." Long stated that he was the driver of the vehicle when they left the lake, not Harwell. He stated that Harrington held a gun on Harwell in the car. He also alleged that Harrington and Drake told Long to "check [Harwell] out" and to "go in the man's pocket. . . ." Long denied that it was his decision to rob Harwell. However, he admitted to being at Drake's house during one of Drake's telephone conversations with Harwell on the day of the crime. Long stated that he overheard Harwell "talking nasty on the phone." After this phone conversation, Long and Drake separated. The following exchange is found in Long's statement to the detective:

Long: See we uh all split up.

Detective: When he was making noises on the phone?

Long: The guy . . . after that the guy picked him up I guess. We was already gone.

Detective: The plan was . . . the plan to go and meet him at the lake?

Long: That must have been the plan, and I followed along with them and I went. That's why I got caught up there.

Detective: The plan was to . . . take his money from him?

Long: I guess that was the plan. Like I said, I did not know the guy at all but I guess that's the way it sounds like that was the plan.

Detective: Is it the plan? I mean did you hear that as a plan or did you not?

Long: Well at the time . . . no, then . . . I'm not gonna say just no, yet. I had figured in my mind, but I just don't know exactly. Like I said, I just don't know exactly.

Long also stated that he did not know who shot Harwell, as he was already back in the car when the shooting occurred.

¶9. Neither defendant testified at trial. The jury returned a verdict of guilty of conspiracy to commit robbery with a deadly weapon, robbery with a deadly weapon, and manslaughter, as a lesser-included offense of murder, for which the defendants had been indicted. Long and Harrington timely perfected this appeal.

## DISCUSSION

### I. WHETHER THE ADMISSION OF THE DEFENDANTS' STATEMENTS AT THE JOINT TRIAL VIOLATED EACH DEFENDANT'S RIGHT TO CONFRONT WITNESSES AGAINST HIM AND THE RULE AGAINST HEARSAY.

¶10. At the joint trial the out-of-court statements of Harrington and Long were admitted into evidence in the State's case-in-chief over the objection of both defendants. In addition to the objections at trial, the defendants made a pretrial motion to exclude the evidence. Further, Harrington had previously moved for severance. Both motions were denied.

¶11. The defendants argue that each statement incriminated the other defendant and that the statements conflicted, containing significant differences about the role and participation of each defendant in the course of events. The defendants argue that they were deprived the right to cross-examine each other in violation of the Confrontation Clauses of the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution.

¶12. Generally, out-of-court statements by a co-defendant which incriminate the defendant should not be admitted into evidence during the State's case-in-chief since it cannot be known whether the co-defendant will testify and be subject to cross-examination to avoid violating the defendant's right to confront witnesses against him. *Smith v. State*, 754 So. 2d 1159, 1162 (Miss. 2000). This principle was established by the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, the Court held that the Confrontation Clause of the Sixth Amendment is violated when a co-defendant's incriminating statement is introduced at a joint trial, even if the jury is instructed to consider the statement only against the person who made it. *Id.* at 126. The Court stated, "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135. The Court recognized a defendant's natural "motivation to shift blame onto others" and found that incriminations between co-defendants are "inevitably suspect." *Id.* According to the Court, "[t]he unreliability of such evidence is intolerably compounded when the alleged accomplice . . . does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." *Id.*

¶13. In *Lee v. Illinois*, 476 U.S. 530, 546, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Supreme Court held to the "time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation." The Court found that the statements at issue in *Lee* diverged with respect to one defendant's participation in the planning of the crime, in her facilitation of the crime, and certain factual circumstances relevant to premeditation. *Id.* at 545. The Court stated that "when the discrepancies between the statements are not insignificant, the co-defendant's confession may not be admitted." *Id.*

¶14. Thus, the task at hand in the present case is to determine whether Harrington's and Long's statements contain discrepancies that are "not insignificant." The trial court found the discrepancies insignificant, and the State contends that the court was not manifestly wrong in making that determination. We, however, find significant differences.

¶15. First, Harrington stated that Long told Harwell to drive the car. Long stated that he drove the car himself. Second, Harrington stated that the robbery was Long's idea. Long specifically denied that fact, instead stating that any actions he took were at the direction of Harrington and Drake, who were armed. Third, Long stated that Harrington told Harwell to "stick 'em up." Harrington did not mention this fact. Fourth, Long stated that Harrington held a gun on Harwell in the car. Harrington failed to mention this fact as well. Fifth, there were inconsistencies as to who shot the victim. Harrington stated that Drake did the shooting. Long stated that he did not know who shot Harwell, thus implying that Harrington may have done so.

¶16. In *Seales v. State*, 495 So. 2d 475 (Miss. 1986), this Court allowed a conviction to stand where co-defendants' statements had been admitted into evidence. The Court based its decision on the fact that "both defendants took the stand outside the presence of the jury to challenge the admissibility of the . . . confessions [and] were subject to direct and cross-examination at this point." *Id.* at 480. The Court also found that "[t]he confessions . . . [were] almost identical in every detail." *Id.*

¶17. Clearly the statements of Harrington and Long are not "almost identical in every detail." The discrepancies are significant. Further, it appears that each defendant attempted to inculpate the other in his statement. For these reasons, the trial court should have excluded the statements or should have severed the joint trial.

¶18. The defendants also assert that the admission of the statements violates the rule against hearsay. "One exception to the hearsay rule is that a statement 'having equivalent circumstantial guarantees of trustworthiness' may be admitted under certain circumstances." *Smith*, 754 So. 2d at 1162. In *Seales*, this Court found that the statements of the co-defendants contained "particularized guarantees of trustworthiness" and were, therefore, admissible. *Seales*, 495 So. 2d at 479. Such "particularized guarantees of trustworthiness" are not present in the case sub judice.

¶19. We find merit to this assignment of error and reverse the convictions and remand for a new trial. Because this issue is dispositive, we do not address the remaining issues presented by the appellants.

## CONCLUSION

¶20. For the foregoing reasons, this Court finds that the trial court committed reversible error in admitting the statements of the defendants in the joint trial in violation of the Confrontation Clause. Therefore, the

judgment of the DeSoto County Circuit Court is reversed, and this case is remanded for new and separate trials.

¶21. **REVERSED AND REMANDED.**

**PITTMAN, C.J., BANKS, P.J., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY; EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**