# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-01521 COA

**DONALD BERNARD MOORE A/K/A "DONMOE"**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. SULLIVAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | JEANNENE PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | DRIVE-BY SHOOTING: SENTENCED TO SERVE A TERM OF 20 YRS IN THE CUSTODY OF THE MDOC; |
| DISPOSITION: | AFFIRMED - 4/20/99 |
| MOTION FOR REHEARING FILED: | 5/18/99 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.

COLEMAN, J., FOR THE COURT:

¶1. A grand jury in the Second Judicial District of Jones County jointly indicted Kenny Ray Smith, Donald Bernard Moore, and Michael Terrell Waters for the felony of "drive-by shooting" which Section 97-3-109 of the Mississippi Code defines.[1] Because the trial court granted Michael Terrell Waters's motion for severance, Kenny Ray Smith and the appellant in this case, Donald Bernard Moore, were tried jointly. Pursuant to the petit jury's verdict that Moore was guilty of this crime, the trial court sentenced Moore "to serve a term of twenty (20) years in the custody of the Mississippi Department of Corrections . . . ." Moore subsequently filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial," which the trial court denied after it had conducted a separate hearing on Moore's motion. In his

appeal from the trial court's separate orders of conviction, Moore presents for this Court's analysis and resolution the following five issues, which we quote verbatim from the statement of the issues included in Moore's brief as required by Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure:

## I.

**THE COURT ERRED IN DENYING THE MOTION OF DEFENDANT TO QUASH INDICTMENT WHEN THE STATE ERRED IN NOT INCLUDING THE LANGUAGE WHICH IS OBVIOUSLY AN ESSENTIAL ELEMENT OF THE CRIME IN ACCORDANCE WITH THE MISSISSIPPI CODE OF 1972[,] SECTION 97-3-109.**

## II.

**THE COURT ERRED IN NOT GRANTING DONALD BERNARD MOORE A CONTINUANCE AFTER THE COURT HAD ALLOWED THE STATE'S ORAL MOTION FOR SEVERANCE OF CO-DEFENDANT, MICHAEL TERRELL WATERS, ON THE DAY OF TRIAL WITHOUT NOTICE TO THE DEFENDANT.**

## III.

**THE COURT ERRED IN FAILING TO SUPPRESS THE WRITTEN AND VIDEO STATEMENTS OF DEFENDANT, KENNY RAY SMITH, AGAINST DONALD BERNARD MOORE, AND FAILED TO SUPPRESS THE WRITTEN AND VIDEO STATEMENTS OF DEFENDANT, DONALD BERNARD MOORE, AGAINST KENNY RAY SMITH.**

## IV.

**THE COURT ERRED IN GRANTING INSTRUCTION S-1 BY THE STATE OVER THE OBJECTION OF THE DEFENDANT, DONALD BERNARD MOORE.**

## V.

**THE COURT ERRED IN GRANTING INSTRUCTION S-2 BY THE STATE OVER THE OBJECTION OF THE DEFENDANT, DONALD BERNARD MOORE.**

¶2. Our analysis of all five issues results in our affirming the trial court's orders of conviction and sentencing.

## I. FACTS

¶3. Around noon on Sunday, December 29,1996, sixty-six year old Silas W. Ulmer went inside his house in Laurel to play with his grandchildren. The front door of his house entered into his bedroom located in the front of his house. Mr. Ulmer sat on the end of his bed directly in front of his bedroom window. What happened next as Mr. Ulmer endeavored to attract the attention of his grandchildren, who were in the back of his house, is best described in the following snippet of his testimony adduced by the State during the trial of this case:

> Now, all of a sudden I heard shooting. I didn't know what it was. And I felt a burning sensation in my side, my right side. And a young man came in the door. Well, I screamed. One of the young man that was outside came in through the door where I was, and he sat on the bed beside me. When I went to get out, he said, "Don't get up." He said, "You're hit." He said, "You're shot." He said, "You're bleeding." And I sat back down on the bed.

After an ambulance took Mr. Ulmer to the emergency room at the South Central Regional Medical Center in Laurel, the physician there determined that Mr. Ulmer had sustained a gunshot wound just above the top of the hip bone. X-rays revealed that the bullet was still in his abdomen. Mr. Ulmer underwent what his surgeon described as "a fairly complicated surgery" which necessitated removal of parts of Mr. Ulmer's large and small intestines because the bullet had struck them both. The bullet removed from Mr. Ulmer's abdomen was ultimately delivered to the Mississippi Crime Laboratory, where Stark Hathcock, a firearms examiner, determined that it had been fired from a particular .25 caliber semi-automatic Lorcin pistol. Mr. Ulmer remained a patient in that hospital for approximately one month and recovered from his wound to the extent that his longevity and the severity of the wound permitted.

¶4. Gregory Johnson lived across the street from Mr. Ulmer's home. Johnson had gone next-door to visit. As Johnson sat on the front porch of the house next-door to Johnson's house around noon, he saw a "white Chevy" drive slowly down the street between Johnson's and Mr. Ulmer's houses. Johnson recognized the car as belonging to Victor Brown because Johnson had gone with Brown when Brown got the car. Inside the car were three African-American males, of whom two were sitting on the front seat and one was sitting on the back seat. He recognized the driver of the car as a man whom he knew only by the nickname of "Man." According to Gregory Johnson, the white Chevy stopped in front of Mr. Ulmer's home and shots were fired from the passenger's side at the Ulmer residence.

¶5. Fritzgerald Johnson, who was Gregory Johnson's older brother, went outside the Johnsons' home just in time to see "a white car pass by." He recognized its driver as Michael Waters. Fritzgerald Johnson recognized Kenny Ray Smith as the man "sitting on the passenger's side -- front seat." Fritzgerald Johnson also recognized Donald Moore (the appellant) in the back seat on the passenger's side. According to Fritzgerald Johnson, the white car did not stop, but he too "heard gun shots." He did not see from where the gun shots came.

¶6. At least five members of the Laurel Police Department went to the Ulmer residence in response to the report of the shots being fired into it. Among the officers was Officer Robert Morris, who had been employed by the Laurel Police Department as a patrolman for almost four years. Officer Morris was also the Constable of the Second Judicial District in Jasper County, which office he had held since January

1988. As Officer Morris and his partner on patrol, Officer Randall Parker, were traveling toward the Ulmer residence, the dispatcher advised them that the "white four-door Chevrolet . . . could be Victor Brown's white Chevrolet four-door."

¶7. Officer Morris knew this particular vehicle "from past experience with Victor Brown in making traffic stops with him and just seeing him drive this vehicle in the city limits of Laurel." From his experience as constable in Jasper County, Officer Morris knew Victor Brown's mother, who lived in the Jasper County Properties, a housing project complex just outside the city limits of Heidelberg, a municipality located in Jasper County. Officer Morris asked the dispatcher for the Laurel Police Department to call the Heidelberg Police Department to "have their units, along with the Sheriff Department units in Jasper County, to be on the look-out for this . . .vehicle." While the record is opaque about the source of his information, Officer Morris was able to provide the three letters of the alphabet which were on Victor Brown's white Chevrolet. The letters were "KAW."

¶8. Officer Joseph Phil Dixon, Jr., a member of the Heidelberg Police Department who was on duty that Sunday afternoon, received a telephone call from the Jasper County Sheriff's office by which he was advised "to be on the look-out for [Victor Brown's car]." Officer Dixon was given the three letters on the license plate of the vehicle. Armed with this information, Officer Dixon drove to a truck stop located "on the Interstate." There, while he was engaged in a conversation with a member of the local volunteer fire department who was "gassing up" the fire truck, Officer Dixon "noticed the vehicle come by." Because what he observed about the vehicle was consistent with his information about the vehicle for which he was waiting, he pursued it, and "performed the stop." Alone, Officer Dixon ultimately placed all three of the white Chevrolet's occupants on the ground.

¶9. About four or five minutes later, Jasper County Sheriff Kenneth Cross arrived, and together Officer Dixon and Sheriff Cross handcuffed all three men. After Officer Dixon and Sheriff Cross had secured all three occupants of the automobile, Officer Dixon contacted the Jasper County Sheriff's Department and requested that the Laurel Police Department be notified that these three men had been apprehended. After the dispatcher for the Laurel Police Department had advised Officers Morris and Parker that these three men were in custody in Jasper County, Officers Morris and Parker returned to the Laurel Police Department, obtained an additional patrol car, and drove to where Officer Dixon and Sheriff Cross were holding the three occupants of the white Chevrolet automobile. Constable Morris[2] retrieved a box of .25 caliber cartridges from the back deck of the automobile, an AK-47 rifle from the rear-seat area of the automobile, and two small-caliber handguns lying beneath the front of the front seat on the passenger's side of the automobile. One of the handguns was a .22 caliber R&G revolver, and the other handgun was a .25 caliber semi-automatic pistol. The bullet recovered from Mr. Ulmer's abdomen had been fired from this .25 caliber semi-automatic pistol.

¶10. Constable Morris drove with Kenny Ray Smith to the Laurel Police Department headquarters, and Officer Parker drove with Donald Moore and Michael Waters to the department's headquarters. There, Officer Morris gave Laurel Police Detective Keith Milsap the box of .25 caliber cartridges and the three firearms which Officer Morris had recovered from the Chevrolet automobile. Later that afternoon, both Kenny Ray Smith and Donald Bernard Moore gave Detective Milsap written statements about their having participated in firing into Mr. Ulmer's home. Later that same afternoon, Detective Milsap recorded Smith and Moore's oral statements on videotape.

¶11. In the meantime, Laurel Police Officer Moises Jacobo, who was among the first officers to arrive at the crime scene, observed several bullet holes in a green car parked in the driveway in front of the Ulmer residence. Officer Jacobo also recovered several spent .25 caliber shells in the street which ran in front of the Ulmer residence. Officer Jacobo assisted Detective Milsap in recovering pieces of a copper covering for a 7.62 mm. round of ammunition which was embedded in an automobile tire leaning against the Ulmer residence. Officer Jacobo identified this round as having been fired from an automatic rifle. Finally, in the company of Detective Milsap, Officer Jacobo found a slug embedded in the front porch of the Ulmer residence. It was later determined that the slug recovered from the front porch had been fired from the .25 caliber pistol recovered from the automobile in which Moore and Smith were riding when Heidelberg Police Officer Joseph Dixon arrested all three occupants of that automobile in Heidelberg.

## II. TRIAL

¶12. After the return of the indictment against Smith, Moore, and Waters, the trial court arraigned Kenny Ray Smith first and, about two weeks later, it arraigned Donald Moore. The trial court set this case for trial on September 16, 1997. On September 15, 1997, the day before this case was set for trial, the assistant district attorney announced to the trial court that only Smith and Moore would stand trial the next day because Waters had moved for a severance. When the trial court called this case for trial as to Smith and Moore, it asked counsel for both the State and each defendant if they were "ready to proceed here this morning?" The district attorney and counsel for both Smith and Moore replied separately, "Yes, Sir."

¶13. After the members of the jury had been selected and sworn, Smith's counsel presented a motion to quash the indictment, which Smith told the judge he had filed. Perhaps because the circuit court had assigned a case number to the indictment but the court's clerk had created separate files for each defendant, with each file ending with an alphabetical identification, no motion to quash the indictment appears filed among the clerk's papers in the record of this appeal. However, during Smith's counsel's argument on Smith's motion to quash the indictment, appellant Moore's counsel stated, "Your Honor, . . . I would, as far as my client is concerned, Donald Moore, move the same motion that [Smith's trial counsel] just brought before the Court and using the same authority."

¶14. Smith's counsel raised two objections to the indictment as grounds to quash it. First, he argued that "the indictment has failed to charge that the shooting [into Mr. Ulmer's residence] was done or attempted to be done to cause serious bodily injury to another or causing such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle." Smith's second ground for quashing the indictment was that "the indictment fails to allow for the instance of lawful self-defense."

¶15. After the conclusion of the State's and Smith's arguments on the motion to quash, the judge opined:

> I know that the tracking of the statute is sometimes done to the extent that every word in there is put in, but I feel like what is before the Court at this time as to the statement of what the conduct of the defendant was, or the defendants were, or is charged with here, is adequate enough to . . .advise . . . these people, what they are having to defend themselves against."

After the judge delivered his opinion and denied the motion to quash, Moore's counsel added, "And we're saying that reckless indifference not being in the indictment is a material element." The judge answered, "My ruling stands."

¶16. The State proceeded by calling several witnesses, including Gregory and Fritzgerald Johnson, Mr. Ulmer, the members of the Laurel Police Department who had participated in the investigation of this crime, Dr. James A. Pittman, the surgeon who removed the bullet from Mr. Ulmer's abdomen, Detective Keith Milsap, who obtained the written and videotaped statements of Smith and Moore, all of which were admitted into evidence, and Stark Hathcock, a firearms examiner employed by the Mississippi Crime Laboratory, who opined that based upon his examination of the bullet removed from Mr. Ulmer's abdomen by Dr. Pittman, the bullet had been fired from the Lorcin .25 caliber semi-automatic pistol which Jasper County Constable Robert Morris had recovered from beneath the front passenger's seat of the white Chevrolet automobile after Heidelberg Police Officer Dixon had stopped it. After the State rested, Smith and Moore rested without calling any witnesses.

## III. ANALYSIS AND RESOLUTION OF THE ISSUES

### A. Moore's first issue

### 1. *Moore's argument*

¶17. As his first issue, Moore adopts the proposition that the trial court erred when it denied the motion to quash the indictment which Smith filed and in which Moore joined. Because a written copy of the motion to quash the indictment does not appear among the clerk's papers, our analysis of Moore's first issue relies on the arguments of counsel for both defendants which the record contains. The indictment charged:

> That Kenny Ray Smith, Donald Bernard Moore, [and] Michael Terrell Waters . . . unlawfully, willfully, and feloniously did knowingly cause serious bodily injury to Silas Ulmer by discharging a firearm while in a vehicle and thus striking the said Silas Ulmer[] with bullets fired from said firearm, in violation of Section 97-3-109 of the Mississippi Code of 1972 . . . .

Moore argues that the indictment is fatally defective because it "fails to include the language of 'purposely or recklessly under circumstances manifesting extreme indifference to the value of human life" and because it omits the phrase, "other than for lawful self defense," which phrase Moore contends is "essential language." Moore then asserts that because the indictment omitted the phrase, "recklessly under circumstances manifesting extreme indifference to the value of human life," he "prepared a defense refuting the charge that he knowingly caused serious bodily injury to Silas Ulmer, while the prosecution prepared its case based on the language of recklessly under circumstances manifesting extreme indifference to the value of human life."

¶18. Moore cites *Burchfield v. State*, 277 So. 2d 623, 625 (Miss. 1973) in which the supreme court explained "that an accused person has a constitutional right to be informed of the nature and material elements of the accusation filed against him." In *Burchfield*, the supreme court opined that the accused "be accorded his right not to stand convicted where the indictment lodged against him fails to charge the essential or material ingredients constituting the crime for which he was tried." *Id*. Moore then cites *Peterson v. State*, 671 So. 2d 647, 655 (Miss. 1996), in which the supreme court reversed the appellant's conviction of sexual battery because the trial court erred when it overruled the appellant's demurrer to the indictment for the felony of sexual abuse. The supreme court explained that "Peterson's indictment for sexual battery was insufficient because it failed to notify him that he was charged with penetrating [the victim] without her consent." *Id*. "Without her consent" was an essential element of the crime of sexual battery. *Id*.

## 2. The State's argument

¶19. The State cites *Daniel v. State*, 536 So. 2d 1319, 1326 (Miss. 1988) to support its assertion that because the indictment included the seven specific items which Rule 7.06 of the Uniform Rules of Circuit and County Practice requires, the indictment was sufficient.[3] However, *Daniel* dealt with a discrepancy between January 17, 1986, the date of the offense charged in the indictment, and January 21, 1986, around which most of the State's evidence revolved. *Id*. The supreme court cited Rule 2.05 of the Uniform Criminal Rules of Circuit Court Practice, the predecessor of Rule 7.06, to support its holding that the indictment "satisfie[d] Rule 2.05(5) by virtue of its language 'on or about January 17, 1986.'" *Id*. The State ignores the first paragraph of UCCCR 7.06, which requires that "[t]he indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." UCCCR 7.06. Indeed the supreme court explained that "[i]f an indictment reasonably provides the actual notice of the nature of the charge against [the accused] and includes the seven specific enumerated items it is sufficient." *Daniel*, 536 So. 2d at 1326. *Daniel* does not support the proposition that inclusion of "the seven specific enumerated items" alone renders the indictment sufficient.

## 3. Resolution of the issue

¶20. We begin our resolution of Moore's first issue with a comparison of Section 97-3-109, which defines the crime of drive-by shooting, with Section 97-3-7(2), which defines the crime of aggravated assault. Section 97-3-109 provides that "[a] person is guilty of a drive-by shooting if he . . . causes such injury *purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life* by discharging a firearm while in or on a vehicle." Miss. Code Ann. § 97-3-109 (Rev. 1994) (emphasis added). Section 97-3-7(2) provides that "[a] person is guilty of aggravated assault if he . . . causes [serious bodily] injury *purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .*" Miss. Code Ann. § 97-3-7(2) (Rev. 1994) (emphasis added). The phrase, "purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life," is common to both statutes.

¶21. *Harbin v. State*, 478 So. 2d 796, 798 (Miss. 1985), involved the appellant's conviction of the crime of aggravated assault. As Moore does in the case *sub judice*, Harbin argued that he could be convicted only of simple assault because the indictment for aggravated assault, on which he was convicted, "fail[ed] to include the language 'under circumstances manifesting extreme indifference to the value of human life.'" *Id*. The supreme court held that the indictment was "legally sufficient" to "afford[] Harbin and his attorney notice in fact that he was being prosecuted for aggravated assault" even though the indictment omitted the phrase, "under circumstances manifesting extreme indifference to the value of human life."

¶22. Later in *Quick v. State*, 569 So. 2d 1197, 1198 (Miss. 1990), the indictment charged that the appellant "did willfully, unlawfully, feloniously, purposely, and knowingly commit an aggravated assault . . . ." On the morning of the trial, the State "moved to amend the indictment to charge that the appellant "intentionally or recklessly under circumstances manifesting extreme indifference to the value of human life" commit an aggravated assault. *Id*. While there was no order which granted this motion, "the jury instructions were changed by interlineation to reflect the language of the requested [amendment]." *Id*. at 1198-99. The supreme court reversed and remanded Quick's conviction of aggravated assault for the following reason:

> We hold here that when the grand jury returned this indictment under sub-section (b), requiring

purposeful and wilfull and knowing actions, that stated the charge upon which this defendant could be tried. When the proposed amendment was offered to allow the jury to convict under section (a) of the statute to include recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life, this proposed a change of substance and not of form.

*Id*. at 1199-1200. The supreme court considered the phrase "recklessly under circumstances manifesting extreme indifference to the value of human life" a "new element which was not contained in the original indictment." *Id*. at 1200.

¶23. In the case *sub judice*, the trial judge opined that the indictment was "adequate enough to . . . advise . . . these people, what they are having to defend themselves against." *Harbin* supports the trial judge's opinion on which he denied Moore's co-defendant's motion to quash the indictment. Moreover, *Quick* establishes that "recklessly under circumstances manifesting extreme indifference to the value of human life" is a "new element" not included in the concept of "purposely, knowingly," which were the words included in Moore's indictment. Because *Harbin* supports the trial court's denial of the motion to quash the indictment of Moore, and because *Quick* establishes that the "recklessly under circumstances . . . ." phrase is a "new element," the trial court did not err when it denied the motion to quash the indictment filed and presented by Moore's co-defendant, in which Moore joined.

¶24. Moore also complains that the indictment was fatally defective because it also omitted the phrase found in Section 97-3-109, "other than for lawful self defense," but he cites no authority to support his complaint. Thus, this Court is entitled to ignore his complaint. *See Edlin v State*, 533 So. 2d 403, 409-10 (Miss. 1988) (holding that "[i]t is the duty of the appellant to overcome the presumption of the correctness of the trial court's judgment by demonstrating some reversible error").

## B. Moore's second issue

### 1. Moore's argument

¶25. In his second issue, Moore asserts that the trial court erred when it denied his motion for continuance which he made after the trial court acknowledged that only Moore and Smith would be tried because Michael Terrell Waters, the third co-defendant, would be tried separately. Moore's first argument is that Waters's severance came too late pursuant to Rule 9.03 of the Uniform Rules of Circuit and County Court Practice.[4] Moore asserts that according to Rule 9.03, "[I]f during trial, the severance can only be granted upon the consent of the defendant." UCCCR 9.03. Moore then asks this Court to hold that Waters's motion for severance "occurred during the trial," which began on September 16, 1997, even though the record reflects that the trial court and parties' discussion of Waters's severance as a defendant occurred the day before the trial began at a pretrial status hearing. According to Moore, if Waters's motion for severance occurred during the trial, then it was necessary for Moore to consent to the severance. Because Moore objected to the severance of Waters, the trial court erred reversibly by granting the severance. Moore's argument indicates a misinterpretation of Rule 9.03.

¶26. The portion of Rule 9.03 on which Moore relies deals with a "grant of severance of *offenses*." UCCCR 9.03 (emphasis added). Only the first paragraph of Rule 9.03 deals with the "severance of *defendants* not involving the death penalty . . . ." UCCCR 9.03 (emphasis added). This portion of Rule 9.03 provides simply that "[t]he granting or refusing of severance . . . shall be in the discretion of the trial judge." UCCCR 9.03. Because the severance about which Moore complains was of the defendant Waters

-- and not offenses for which Moore and Waters had been indicted -- this Court need consider this argument no further.

¶27. Moore's second argument essentially asserts prejudice because his "trial strategy had been prepared based on all three defendants['] being present in court." Thus, according to Moore, "A continuance should have been allowed the attorneys for . . . Moore and . . . Smith to prepare [for trial] without the presence of co-defendant, Michael Terrell Waters." Moore cites *Lester v. State*, 692 So. 2d 755, 777 (Miss. 1997), in which the supreme court held that "the trial court abused its discretion in refusing Lester's request for a continuance in order to adequately prepare a defense of the surprise introduction of sexual abuse evidence." Lester had been convicted of the capital murder of his one year old daughter in the course of felonious child abuse and had been sentenced to death. *Id*. at 755.

### 2. The State's argument

¶28. The State responds by correctly pointing out that the record and transcript "contain no motion for continuance" and that it was "Moore's burden on appeal to present to [this Court] . . . an adequate record to demonstrate trial court error," which Moore has failed to do. Regardless of this apparent omission in the record, the State contends that "Moore has failed to demonstrate abuse of discretion in [the trial judge's] decision to deny a continuance" and that Moore does not "allege how his defense to these charges would have differed had he more time to prepare."

### 3. Resolution of the issue

¶29. The state of the record in this case reflects less than perfection, perhaps because separate trial court files were created for each of the defendants tried in this case, Moore and Kenny Ray Smith. While the State is absolutely correct that the record contains no motion for continuance which Moore made in relation to the severance of Moore's co-defendant, Michael Terrell Waters, Moore's record excerpts which Rule 30 of the Rules of Appellate Procedure requires contains a one-page pleading entitled "Agreed Stipulation as to the Record." It is signed by both Moore's trial counsel and an assistant district attorney, and it recites that "the parties are agreed and do hereby stipulate, pursuant to Mississippi Supreme Court Rule 10(e) [sic] as to be following:" It's second paragraph reads as follows:

> 2. That the Defendants, Donald Bernard Moore and Kenny Ray Smith, made a verbal motion to continue the case until they could prepare for trial without Michael Waters['s] being a co-defendant[,] and same was denied by the Court.

Our problem with this agreed stipulation as to the record, which Moore included in his record excerpts and on which there appears the circuit clerk's filing date of April 30, 1998, is that it was not included in the clerk's papers.

¶30. However that uncertainty in the record evolved, this Court elects to review and to resolve Moore's second issue. First, when the trial court called this case for trial on the next day after the State had announced that it had acquiesced in Waters's severance, it inquired if counsel for both Smith and Moore were ready. Moore's counsel replied, "Yes, Sir." Moore's counsel did not advise the trial court that his client was prejudiced by going to trial that day. Secondly, according to *Jackson v. State*, 538 So. 2d 1186 (Miss. 1989), which the State cites in its brief, a criminal defendant must demonstrate that the trial court's denial of the motion for continuance resulted in substantial prejudice to the defendant's right to a fair

opportunity to prepare and to present his defense.

¶31. Moore's only allegation of prejudice is "the fact that his attorney was not prepared to try the case because of the severance granted by the trial court." Moore cites *Lambert v. State*, 654 So. 2d 17, 22 (Miss. 1995), to support his only allegation of prejudice. However, *Lambert* is readily distinguishable from the case *sub judice* because unlike Moore's counsel, Lambert's counsel did *not* announce that he was prepared for trial. *Lambert*, 654 So. 2d at 22. From its review of the record in this case, this Court finds no evidence that Moore's counsel was not prepared for trial. Indeed, Moore's counsel on appeal fails to identify specifically his unpreparedness and further fails to specify the manner in which his unpreparedness prejudiced his client's defense. Therefore, this Court affirms the trial court's denial of Moore's motion for continuance which the record but opaquely reflects was made after the State announced that Moore's co-indictee had been severed.

## C. Moore's third issue

### 1. Moore's argument

¶32. For his third issue, Moore asserts that the trial court "erred in failing to suppress the written and video statements of . . . Smith . . . against . . . Moore, and failed to suppress the written and video statements of . . . Moore . . . against . . . Smith." Moore does not argue that the written and videotaped statements which both Smith and he gave Investigator Milsap and Detective Sparrow were coerced; neither does Moore argue that their statements were given in violation of their Fifth Amendment right not to incriminate themselves. Instead, Moore argues that the admission of Smith's written and videotaped statements against him violated his "Sixth Amendment right to confront or cross-examine the maker of those statements." Moore further asserts that Smith's statements are hearsay and, thus, the trial court's admission of Smith's statements violated Rules 801 and 802 of the Mississippi Rules of Evidence.[5]

### 2. The State's argument

¶33. The State cites *Seales v. State*, 495 So. 2d 475 (Miss. 1986) to support its position that because Smith's and Moore's statements were sufficiently similar in all material aspects to allow them to be found to bear sufficient indicia of trustworthiness, Smith's statements were admissible. Indeed, the trial judge admitted Smith's statements because they were "so similar in nature with very few exceptions," and thus "[t]he *Seales* case will rule."

### 3. Resolution of the issue

¶34. In *Mitchell v. State*, 495 So. 2d 5, 8-9 (Miss. 1986), the supreme court discussed the development of the law on this issue. It's discussion began with the Confrontation Clause of the Sixth Amendment, which *Pointer v. Texas*, 380 U.S. 400 (1965) rendered obligatory upon the states. *Mitchell*, 495 So. 2d at 8. Article 3, § 26 of the Mississippi Constitution secures a comparable right. *Bruton v. United States*, 391 U.S. 123, 126 (1968) held that the "admission of a co-defendant's extrajudicial statement that inculpates the other defendant violates the other's Sixth Amendment right to confront witnesses against him." *Mitchell*, 495 So. 2d at 9.

¶35. Nevertheless, the Mississippi Supreme Court noted that the *Bruton* rule is not absolute:

> The presumption of unreliability ordinarily attached to a co-defendant's statement may nonetheless be

rebutted so as to meet confrontation clause standards if it is supported by a showing of particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66, . . . (1980). Where each defendant has given a confession and where the two confessions substantially interlock on the core facts of the crime charged, the level of trustworthiness in fact -- and thus that constitutionally necessary for admissibility -- may sometimes be found. *Parker v. Randolph*, 442 U.S. 62 . . . (1979); *Seales v. State*, 495 So.2d 475, 480 (Miss. 1986).

*Mitchell*, 495 So. 2d at 9.

¶36. The Mississippi Supreme Court affirmed the convictions of Billy Gene Seales and Ricky Brown of armed robbery in *Seales v. State*, 495 So. 2d 475 (Miss. 1986). Seales and Brown were tried jointly, and their respective confessions were admitted into evidence even though neither testified. *Id*. at 478. About the admissibility of each defendant's confession, the supreme court opined:

The confessions in the case at bar are almost identical in every detail. Furthermore, each defendant admitted his own guilt. This Court concludes that there is a showing of "particularized guarantee of trustworthiness" to permit introduction during the state's case in chief.

*Id*. at 480-81.

¶37. Pursuant to *Seales*, this Court's resolution of Moore's third issue requires that it analyze the content of the confessions of both Moore and Smith to determine the extent to which their confessions were identical and whether both Moore and Smith admitted their respective guilt in the drive-by shooting which resulted in the serious wounding of Silas Ulmer.

¶38. The statements began with the explanation that earlier that day, Smith and his girl friend, Melanie Ulmer, Barry Ulmer's sister, had had an encounter during which Smith asked Ms. Ulmer to return his jewelry. She refused. Later Barry Ulmer came to Smith's aunt's house, called Smith outside, and accused him of putting a dent in his mother's car earlier when the encounter between Melanie Ulmer and Smith occurred. According to Smith's statement, Barry Ulmer put a 9 mm. pistol in Smith's mouth and broke Smith's tooth. These encounters with Melanie Ulmer and her brother motivated the subsequent drive-by shooting into the Ulmers' residence during which Silas Ulmer was wounded.

¶39. This Court need not recite verbatim the content of the written and videotaped confessions of both Moore and Smith. Instead, we think it sufficient to relate that all four confessions placed Moore and Smith in the car which Waters drove past the Ulmer residence. All four confessions also place the .22 caliber pistol, the .25 caliber pistol, and the AK 40 automatic rifle inside the automobile. Moore and Smith each admitted that he fired a gun from the automobile as Waters drove by the Ulmer residence.

¶40. Regardless of these similarities, Moore asserts that because his and Smith's statements "differed in substantial aspects," the trial court erred by admitting Smith's written and videotaped statements. Moore then argues:

The most pertinent distinction that exists in the statements is that Silas Ulmer was struck by a .25 caliber pistol. In the statement given by [Moore], Kenny Ray Smith had possession of the .25 caliber

pistol and was firing it. In contrast, the statement of [Smith] . . . alleges that [Moore] had possession of the .25 caliber pistol and was firing it when the incident occurred.

Moore contends that this contrast between the statements which Smith and he gave is "of major importance because to be guilty of drive-by-shooting here, [Moore] could only be guilty if he caused the injury."

¶41. Moore's written statement contains the following sentences:

Boo Lou's car was there [in front of the Ulmer residence] so we started shooting. I shot at the car. I didn't shoot but three times. I was shooting the AK. I know Kenny Ray was shooting the .22, but there was stuff hitting me in my face, and I don't know what else he was shooting.

¶42. Moore's videotaped confession included the following statements:

When we got up there [to the Ulmer residence], Kenny Ray said that he was going to shoot at the car, so I started shooting at the car. I shot 3 shot [sic], I shot 3 round [sic], 3 shots.

When Detective Sparrow asked Moore, "What did you shoot with?," Moore answered, "That AK." When Detective Sparrow asked, "What else happened, who else was shooting?," Moore replied, "Kenny Ray was shooting." Moore admitted that he saw Smith "shoot the .22." Again, Moore admitted that he was shooting at the car parked in front of the Ulmer residence. Moore's confessions that he fired his AK automatic rifle from the car were admissible against him in the absence of any evidence that they were not free and voluntary.

¶43. Kenny Ray Smith's written confession contained the following statements:

When we [got] to [the Ulmer] house, I was going to get out to fight [Barry Ulmer], but Donald Moore started shooting. Then I shot two times at the car.

Smith's videotaped confession contained these statements:

And -- uh -- Donald [Moore] had a [sic] AK which was shown first and a .25 -- a black .25.

. . . .

I told [Michael, the driver] that I was going straight up to a fist fight right, but when Donald, Donald just started shooting, shooting the gun, so he [Moore] didn't stop, so he just kept going . . . .

Again, Smith stated that he was shooting "at Barry's car." When Detective Sparrow asked, "How many times did Donald [Moore] shoot the AK?", Smith replied, "He shot seven times." In response to Detective Sparrow's query about how many times Moore shot the .25 caliber pistol, Smith stated, "Four times. Maybe not four times, two times."

¶44. We have quoted in detail from all four statements to demonstrate that while Smith's written and videotaped confessions contained statements that Moore fired from the car as it passed the Ulmer residence, Smith admitted that he also fired his .22 caliber pistol from the car while Moore fired both his "AK" and his .25 caliber pistol. These quoted statements "are almost identical in every detail." *See Seales*, 495 So. 2d at 480.

¶45. Just as the Mississippi Supreme Court concluded "that there [was] a showing of 'particularized guarantee of trustworthiness' to permit introduction [of both defendants' statements] during the state's case in chief," in *Seales*, this Court concludes that the near identity of the relevant details in all four statements of both Moore and Smith combined with each defendant's admission that he shot from within the automobile established the same "particularized guarantee of trustworthiness" to permit the trial court's introduction of Smith's written and videotaped confessions, even though those confessions contained admittedly hearsay statements that Moore had also fired both his AK automatic rifle and his .25 caliber pistol from the same automobile. Thus, we affirm the trial court's admitting Smith's written and videotaped statements into evidence based upon the *Seales* case.

## D. Moore's fourth and fifth issues

### 1. Moore's arguments

¶46. Because it will become apparent that a common thread runs throughout Moore's arguments on both his fourth and fifth issues, both of which pertain to the trial court's granting Instructions Numbers S-1 and S-2, we combine our review of these two issues. Instruction S-1 reads as follows:

JURY INSTRUCTION S-1

The Court instructs the Jury that the Defendants have been charged with the crime of Drive By Shooting.

If the Jury finds from the evidence, beyond a reasonable doubt,

1. that Kenny Ray Smith and Donald Bernard Moore, or either of them, on or about the 29th day of December, 1996 in the City of Laurel, Second Judicial District, Jones County, Mississippi, did purposely, knowingly or recklessly;

2. discharged a firearm or firearms while said Defendants were in or on a vehicle under circumstances manifesting extreme indifference to the value of human life by discharging said firearm or firearms and thus striking the said Silas Ulmer, with a bullet and;

3. that said Kenny Ray Smith and Donald Bernard Moore were not acting in lawful self-defense then you shall find the Defendants, or either of them, guilty as charged.

If the prosecution has failed to prove any one or more of the elements in this case beyond a reasonable doubt then you shall find the defendants, or either of them, not guilty.

Instruction S-2 reads as follows:

JURY INSTRUCTION S-2

The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully, and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if they [sic] had with their [sic] own hand committed the whole offense; and if you believe from the evidence beyond a reasonable doubt that the defendants, Kenny Ray Smith and Donald Bernard Moore, or either of them, did willfully, unlawfully, and feloniously do any act which is an element of

the crime with which they are charged or immediately connected with it or leading to its commission, then and in that event, you should find the defendants, or either of them, guilty of that crime as the case may be.

### a. Instruction S-1

¶47. Moore's argument is the following:

It is clear from the evidence that only one bullet struck Silas Ulmer. Therefore, only one of the defendants, either [Moore] or [Smith], could have fired the bullet that struck Silas Ulmer. The State tries to side step the requirements of the statute by lumping both defendants, [Moore and Smith] in one jury instruction, *i. e.*, S-1. Instruction S-1 allows the jury to pick either defendant despite the fact that Silas Ulmer was struck by only one bullet and despite the fact that there is [sic] no way to determine which defendant fired the gun which actually struck Silas Ulmer.

Moore cites *Hunter v. State*, 684 So. 2d 625, 635 (Miss. 1996), in which the Mississippi Supreme Court explained that "because the State has to prove each element of the crime beyond a reasonable doubt, then the State also has to insure that the jury is properly instructed with regard to the elements of the crime."

### b. Instruction S-2

¶48. Moore observes that "Instruction S-2 seems to be an accessory instruction." Next, he asserts that "[n] either [Moore] nor [Smith] was charged with accessory. Moore again relies on *Hunter* to assert that Instruction S-2 "clearly misstates the law and is reversible." According to Moore, "To be found guilty of drive by shooting, the jury must be instructed that [Moore was] guilty of every essential element of the crime which is charged in the indictment."

### 2. The State's argument

### a. Instruction S-1

¶49. The State counters Moore's argument that the trial court erred in granting Instruction S-1 with its argument that to convict Moore "of drive-by shooting it was only necessary that the jury finding him guilty, *either as an accessory or a principal*, of purposely, knowingly or recklessly manifesting extreme indifference to human life [by] causing serious bodily injury to the victim by firing a weapon from a car."

### b. Instruction S-2

¶50. The State counters Moore's argument that the trial court erred in granting Instruction S-2 by citing *Hoops v. State*, 681 So. 2d 521, 533 (Miss. 1996), in which the supreme court approved an instruction composed with striking similarity to the first six lines of Instruction S-2 in the case *sub judice*. It then cites Section 97-1-3 of the Mississippi Code which provides: "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such . . . ." Miss. Code Ann. § 97-1-3 (Rev. 1994).

### 3. Resolution of Issues 4 and 5

¶51. The common thread running throughout Moore's arguments on both his fourth and fifth issues is that because only one bullet fired from the .25 caliber pistol recovered from the white Chevrolet automobile in

which Moore and Smith were riding when they were arrested struck Mr. Ulmer, the State's burden was to prove whether Moore, Smith, or perhaps even Michael Terrell Waters, the driver, fired the .25 caliber pistol. Moore argues that because the four admissions of Moore and Smith were at best ambiguous about who fired this pistol, both instructions were erroneously granted by the trial court because these two instructions "lump[ed] both defendants, [Moore] and [Smith], in one jury instruction, *i. e.*, S-1."

¶52. *Price v. State*, 362 So. 2d 204, 205 (Miss. 1978), provides the short answer to Moore's argument. In this case, the appellant was convicted of capital murder and sentenced to life imprisonment for the murder of Mrs. Grace Green. *Id*. Mrs. Green was the manager of a motel in Clarksdale. *Id*. She sat at the end of the check-in desk, when the appellant entered the motel ostensibly to register as its guest. Instead, the appellant pointed a pistol at the desk clerk, Mrs. Marie Furniss, and forcibly grabbed some money from the cash drawer. As Mrs. Furniss stooped behind the counter, she heard one shot, after which Mrs. Green began to scream. Another shot was fired, and both men left. Because neither man wore a mask, Mrs. Furniss positively identified the appellant as the man who signed the registration card at the desk, but she was unable to say who fired the fatal shot into Mrs. Green.

¶53. The Mississippi Supreme Court offered the following explanation for affirming Price's conviction of the murder of Mrs. Green:

> It is also familiar law that when two or more persons act in concert, with a common design, in committing a crime of violence upon others, and a homicide committed by one of them is incident to the execution of the common design, both are criminally liable for the homicide. The fact that the accused did not fire the fatal shot does not relieve him from criminal responsibility for the death of Mrs. Green who was slain by the accused's confederate in carrying out the common design to rob.

*Price*, 362 So. 2d at 205.

¶54. The written and videotaped statements of Moore and Smith established that while Michael Terrell Waters drove the Chevrolet automobile by the Ulmer residence, both Moore and Smith fired all three weapons which were inside the automobile in the direction of the Ulmer residence. A firearms examiner employed by the Mississippi State Crime Laboratory determined that slugs, casings, and spent cartridges recovered from the crime scene were fired from the .25 caliber pistol recovered from the automobile in which Moore and Smith were riding when they were arrested. *Price* renders it irrelevant whether Moore or Smith or Waters fired the shot which wounded Silas Ulmer.

¶55. The following paraphrase of the previous quotation from *Price,* renders it apparent that the trial court did not err in granting either Instruction S-1 or Instruction S-2: "[W]hen two or more persons act in concert, with a common design, in committing a crime of violence upon others, and a [serious bodily injury] committed by one of them is incident to the execution of the common design, both are criminally liable for the [drive-by shooting]. The fact that [Moore may] not [have] fire[d] the [injurious] shot does not relieve him from criminal responsibility for the [serious injury to Mr. Ulmer] who was [wounded] . . . in [Moore, Smith, and Waters's] carrying out the common design to [commit the drive-by shooting into the Ulmer residence]." Therefore, this Court affirms the trial court's granting both Instruction S-1 and Instruction S-2, which the State requested.

## IV. SUMMARY

¶56. The indictment of Smith and Moore properly charged them with the crime of drive-by shooting as defined by Section 97-3-109 of the Mississippi Code according to *Harbin v. State*. According to *Quick v. State*, the indictment might not have been proper had it also included the phrase "recklessly under circumstances manifesting extreme indifference to the value of human life." The trial court did not err by denying Moore's motion for continuance which was made after it became apparent that Michael Terrell Waters, Moore's joint indictee, would not be tried with Moore and Smith. Moore demonstrated no prejudice which resulted from proceeding to trial the next day, especially when his counsel announced that he was ready for trial in response to the trial judge's inquiry.

¶57. Regardless of potential confrontation and hearsay issues, the trial court did not err when it admitted Smith's written and videotaped admissions into evidence. Moore did not contend that his written and videotaped admissions were coerced, and he admitted firing from the automobile as Michael Terrell Waters drove by the Ulmer residence. Thus, while Smith's statements that Moore fired from the automobile were hearsay in the abstract. Moore admitted that he fired from the automobile, albeit he claimed that he fired at the car parked in the driveway in front of the Ulmer residence. Moreover, as we have demonstrated, Smith's and Moore's admissions were "almost identical in every detail." *See Seales*, 495 So. 2d at 480-81. Thus, Moore's admission and the consistency of detail between his and Smith's admissions established a "particularized guarantee of trustworthiness" which supported the trial judge's admitting Smith's admissions into evidence.

¶58. Because the State's evidence established that Waters, Smith, and Moore "act[ed] in concert, with a common design [to fire from the automobile in which they were riding], in committing a crime of violence [drive-by shooting] upon [Silas Ulmer], . . . both are criminally liable for the [drive-by shooting by which Ulmer was seriously wounded]." *See Price*, 362 So. 2d at 205. Therefore, the trial court did not err by granting Instructions S-1 and S-2, which the State requested. The trial court's judgment of Moore's conviction of the crime of drive-by shooting and its sentence of Moore to serve a term of twenty years in the custody of the Mississippi Department of Corrections are affirmed.

¶59. **THE FINAL JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY OF THE APPELLANT'S CONVICTION OF A DRIVE-BY SHOOTING AND ITS SENTENCE OF THE APPELLANT TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.**

**KING P.J., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS WITH RESULT ONLY. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J.**

SOUTHWICK, P.J., dissenting

¶60. It is with sincere respect for the views of the majority and the persuasiveness with which they are expressed that I nonetheless find myself compelled to dissent.

¶61. I agree with the majority that the crime of a drive-by shooting can be committed both purposefully or instead recklessly. As the majority squarely and properly holds, to commit the crime recklessly with indifference for the lives of others is a new element of the offense that is not required in order to prove that a defendant acted purposefully. Cited as so holding was *Quick v. State,* 569 So. 2d 1197, 1200 (Miss. 1990). In other words, performing the necessary acts on purpose is one means of committing the offense, and no recklessness suggestive of manifest indifference to others' lives is needed. On the other hand, to commit the offense with reckless disregard is entirely separate from a purposeful commission of the crime and could by itself have been charged.

¶62. Therefore it was proper for the court to deny the motion to quash the indictment. The failure to indict for reckless disregard is the equivalent of failing to indict for an entirely separate crime. It is simply not a defect in the indictment.

¶63. However, the same principles that permitted the case to proceed on an indictment that does not include recklessness necessarily prevents the jury from being given instructions on reckless shooting. Reckless disregard is a new element and as such must be in the indictment. The most unfortunate part of this whole problem is that the State's desired instructions were filed before the trial even began. The fact that the instructions included reckless disregard was discussed at the motion to quash hearing. It would have been so simple, so saving in trial and appellate court time, for the proper participants in the trial to note then the inconsistency of what they were proceeding to do. That not having been done, the responsibility of reversing the conviction and requiring a new trial is unfortunately but undeniably given to us.

¶64. Reversal is required because an accused must be "informed of the nature and cause of the accusation against him." *Peterson v. State*, 671 So. 2d 647, 654 (Miss. 1996). The *Peterson* court corrected any misapprehensions that might have arisen from language in some opinions, that including the seven formal items required by a circuit court rule such as the name of the defendant, date of the offense, and so forth, was the extent of the requirement for indictments. *Id.* at 654-55. Instead, every essential element of the offense itself must be charged. *Id.* at 655. As the *Quick* case held, reckless disregard is a separate and new element to the purposeful commission of the crime. To be charged with shooting the victim on purpose is a different crime, proven by different facts, than is shooting in the direction of the victim's house at someone else, in reckless disregard for the harm that could be caused to others. Moore was not notified in the indictment and could not be convicted of this charge.

¶65. The reversible error applies to the instruction on recklessness. As already stated, it was proper to conduct the trial with the indictment that omitted recklessness, but it was only possible to convict on purposeful shooting. The next question is whether defense counsel ever with clarity objected at trial to the now-disputed instruction. Counsel for Moore objected to this instruction in a variety of ways, but the objection was not verbatim what is now raised. Counsel for co-defendant Smith also made objections. Here is what was argued:

MR. RATCLIFF (Smith's counsel): And I think definitely, if you approve, it's been offered where

there is some contention about who fired what. There should be separate instructions, one for each one of them. Because the jury could easily conclude that one did and one didn't.

MS. PACIFIC (district attorney): There is no requirement under the statute approving injury. There is no requirement that if bullets were fired that anyone be hit. This is not an aggravated assault case; this is a drive-by shooting. And the statute says, or causes such injury purposefully, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in a vehicle. There is nothing in the statute that spells out that anyone has to be injured.

MR. SULLIVAN (Moore's counsel): It says, "causing such injury".

MR. RATCLIFF: That is exactly what it requires.

MR. SULLIVAN: It says, a person guilty of drive-by shooting, if -- and it lists two requirements. First, if he attempts to cause serious bodily injury to another.

THE COURT: Which one are you reading?

MR. SULLIVAN: This is -- I'm just reading from the statute.

THE COURT: All right.

MR. SULLIVAN: If he attempts to cause serious bodily injury. Okay? But Number Two is, a person guilty of drive-by shooting, if he causes such injury purposefully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle. But it says, causes such injury. So somebody has got to cause the injury.

MS. PACIFIC: No. That's -- the whole purpose of the drive-by shooting statute is to address people shooting from vehicles whether injuries are caused or not. We would have indicted these people for aggravated assault otherwise.

MR. RATCLIFF: Well, Judge, that's really the whole crux of the argument we had a while ago. That's why the indictment is fatally defective. They made a bad choice. And the choice they made was -- and they put it in there, in the indictment. They said that this man has been shot. So when you make that choice, then you've got to go with the fact that he has been caused injury. And that's what the statute says. It says that. It doesn't say -- now if they had said they attempted, then they could get away with leaving that out. But they didn't do that. They went for the whole nine yards because the man had been hit with a bullet.

So they've got to say what the statute says when a man gets hit by a bullet. And that's cause injury. And that's exactly -- you know, that's what we talked about with the indictment. They made that practiced, I assume, conscious decision when they indicted these folks. See, it says a person is guilty of a drive-by shooting if he attempts -- that's one aspect -- other than for lawful self-defense to cause serious bodily injury to another, or causes such injury, purposefully, knowingly, or recklessly. Well they went for the cause injury. That's what they went for. They said the man had been shot.

MR. SULLIVAN: And the only one who can be convicted is the one who actually shot him.

¶66. The result of this exchange was that the two defense counsel collectively raised again the failure of the indictment to include the recklessness aspect, but then Moore's counsel elaborated that the resulting problem was that the State chose causing injury over attempting to cause. That is in fact not the problem.

¶67. The majority may be correct that the objection did not expressly inform the trial court of the matter now at issue. Alluding to the previous day's hearing on the motion to quash that did specifically raise the issue may not have been sufficient to satisfy all the formalities for raising an issue and preserving error for appeal. I would hold that the issue was raised, but that is of little importance. Raising at trial the precise issue in the precise words ultimately is irrelevant because the failure of an indictment to charge the offense for which conviction is obtained is plain error that can be raised for the first time on appeal.

> Furthermore, this Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, they may be first raised at anytime, including on appeal. *See Copeland v. State*, 423 So.2d 1333 (Miss.1982) (substantive failure of an indictment to charge a crime was not waivable and not subject to amendment).

*State v. Berryhill,* 703 So.2d 250, 254 (Miss. 1997).

¶68. Consequently I would reverse the judgment and remand for a new trial.

## MCMILLIN, C.J., JOINS THIS SEPARATE OPINION.

1. Section 97-3-109 defines this crime as follows:

(1) A person is guilty of a drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle.

Miss. Code Ann. § 97-3-109 (Rev. 1994). Anyone convicted of violating subsection (1) of Section 97-3-109 "shall be punished by commitment to the custody of the State Department of Corrections for a term not to exceed thirty (30) years and a fine not to exceed Ten Thousand Dollars ($10,000.00). *Id*.

2. Because Robert Morris was in Jasper County, where he served as constable, we use that title while Morris was within Jasper County.

3. Rule 7.06, entitled "Indictments," provides:

The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:

1. The name of the accused;

2. The date on which the indictment was filed in court;

3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;

4. The county and judicial district in which the indictment is brought;

5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

6. The signature of the foreman of the grand jury issuing it; and

7. The words "against the peace and dignity of the state."

UCCCR 7.06.

4. Rule 9.03 reads:

The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge.

The court may, on motion of the state or defendant, grant a severance of offenses whenever:

1. If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

2. If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

UCCCR 9.03.

5. Moore frames his third issue as though this Court should also consider whether it was error to admit Moore's written and videotaped statements against his co-defendant, Kenny Ray Smith. However, this Court declines his invitation to review this aspect of his third issue because Moore's statements were clearly admissible against him in the absence of Moore's assertion that his statements were not free and voluntary. For this Court, the only issue is whether Smith's statements were admissible even though they might appear to be in the nature of hearsay statements against Moore.